16107

STATE v. GREEN

(48 S. E. (2d) 641)

*Mr. L. A. Hutson,* of Orangeburg, for Appellant,

*Messrs. Julian S. Wolfe, Solicitor,* and *Marshall B. Williams,* of Orangeburg, for Respondent,

July 14, 1948.

OXNER, J.: Appellant, Frank Green, was jointly indicted with his mother, Clara Bell Green, for the murder of Willie Griffin. Upon the trial of the case, the jury returned a verdict of not guilty as to Clara Bell Green and found appellant guilty of manslaughter. A motion for a new trial was made upon the grounds (1) that the evidence was insufficient to sustain appellant's conviction and conclusively established his plea of self-defense (there was no motion for a directed verdict), and (2) that the Court gave misleading and confusing instructions to the jury with reference to an alleged written confession by appellant. The motion was refused and appellant was sentenced to imprisonment for a term of six years. The exceptions on this appeal challenge the correctness of the decision of the trial judge in refusing appellant's motion for a new trial on the grounds mentioned.

Appellant and deceased, both young Negroes, resided within a block of each other in the City of Orangeburg. Appellant lived with his mother and deceased had a room in the home of one Lizzie Brown, where Ertha Lee Edwards and several other Negroes also roomed. About 10 o'clock on the night of August 1, 1947, appellant left his home and went to a dance hall near Orangeburg where he met Ertha Lee Edwards. Ertha Lee requested him to turn over to her an ice pick which he had in his possession, stating that he might get in trouble with it. He did so. After remaining at the dance hall for a period of two or three hours, they walked back to the house where Ertha Lee and the deceased roomed. The deceased was present when they arrived and shortly thereafter he and appellant commenced fighting. An onlooker went to appellant's home and informed his mother, who was asleep, of the difficulty. She immediately rushed to the scene and, according to her testimony, tried to stop the difficulty, but according to the

State's testimony interceded in behalf of her son. The fight ended when the deceased fell to the ground as a result of being stabbed several times with an ice pick, after which appellant and his mother went home. In a few minutes the officers arrived, directed that the deceased be removed to the hospital, and after a short investigation, arrested appellant at his home and carried him to the same hospital. Soon thereafter, about 2:35 that morning, the deceased died. Appellant was then examined by the physician on duty in the emergency room who discovered a little hole in his right leg. According to the testimony of the officers, appellant stated to this physician that he accidentally stabbed himself in the right leg during the fight. He was immediately discharged and carried to the county jail.

Appellant testified that shortly after he and Ertha Lee arrived at the house from the dance hall, the deceased, who was sitting on the porch, knocked him over the banisters because of "a little grudge. We had been in trouble before", and jumped on him with a knife; that he got up and walked to the edge of the yard where deceased again knocked him down; that as he attempted to get up, the deceased stabbed him in the side with the knife and then pulled him by the collar a distance of about fifty feet where he was again knocked to the ground; that while on the ground it appeared to him that deceased was going to cut his throat and he took the ice pick from his pocket and stabbed him; and that about the time he got up, his mother arrived and tried to stop the difficulty, but the deceased again assaulted him with a knife and he stabbed him a second time with the ice pick. In a written confession made two or three days after the homicide, he stated that the deceased first struck him after he had told two Negro men that if they did not stop their argument, the "police would come down there." In this confession he said the ice pick was handed to him by Ertha Lee after the fight commenced.

Appellant's mother, who claimed that she tried to separate her son and the deceased, testified that she did not see any knife or ice pick. Similar testimony was given by Lizzie Brown, a witness for appellant, who said that she saw part of the encounter. There were also two witnesses for the State who testified that they were near the appellant and deceased during most of the difficulty and observed no weapon of any kind. The officers carefully searched the grounds where the fight occurred and were unable to find a knife.

The two policemen who arrested appellant testified that they examined his person and clothes on the night of the homicide but found nothing to indicate that his clothes had been cut with a knife and saw no blood, bruises, or cuts on his person except a small hole in his right leg, where appellant said he had accidentally stabbed himself during the fight. They further testified that appellant made no complaint of having been cut with a knife until the second day he was in jail when he stated that the deceased had cut him on his right side above the hip, but an examination at that time disclosed only a superficial scratch which apparently had not been recently made.

In passing on the sufficiency of the evidence to sustain a conviction, the evidence and the inferences which may reasonably be drawn therefrom must be viewed in the most favorable light for the State; and "if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." *State v. Epes,* 209 S. C. 246, 39 S. E. (2d) 769, 779.

Appellant admits the killing of the deceased and seeks to excuse the homicide on the ground of self-defense. He said he was assaulted with a knife, but the jury could have reasonably inferred from other testi-

mony in the case that this claim was unfounded. Assuming that appellant was without fault in bringing on the difficulty, it was for the jury to say whether he went further than was reasonably necessary in the defense of his person and also whether he could, with reasonable safety to himself, have retreated and thereby avoided taking the life of the deceased. His contention that the evidence conclusively established his plea of self-defense is based largely upon the fact that the State introduced in evidence his written confession, which he says established all the elements of self-defense. Appellant's construction of this confession may be correct, but its introduction did not preclude the State from showing that some of the facts stated therein were untrue. 20 Am. Jur., Evidence, Section 488, page 426; 22 C. J. S., Criminal Law, § 842, page 1478. The State had a right to prove, by direct or circumstantial evidence, the falsity of the exculpatory matter. When such evidence was offered, it was for the jury to say what weight should be given the several parts of the statement. They could accept any part of it which they deemed worthy of belief and reject any portion which they did not believe. Appellant occupies no better position than he would if the State had offered a witness who had testified to the facts contained in this alleged confession. The rule in such a case is that while a party cannot impeach his own witness, he may prove by other witnesses that the facts are otherwise than as such witness testified them to be. *State v. Nelson,* 192 S. C. 422, 7 S. E. (2d) 72; *Ex parte: Nimmer,* S. C., 47 S. E. (2d) 716.

The exception imputing error in the instructions given the jury with reference to appellant's alleged written confession is too general to warrant consideration. We find it difficult to ascertain in which respect appellant claims that the instructions as to this phase of the case were confusing and misleading. Both appellant and his mother were on trial. The jury was adequately instructed

that any statement made by either, when the other was not present, could only be considered against the defendant making it. We find no basis for the assertion that the jury may have been confused. During the trial appellant requested no clarification or further instructions. The complaint now made was first brought to the attention of the Court below in appellant's motion for a new trial.

A careful examination of the record discloses that appellant was given a fair and impartial trial. The jury found the facts against him. We are not at liberty to disturb the verdict.

Judgment affirmed.

BAKER, C.J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.