### 17462

The STATE, Respondent, v. Fred S. LIVINGSTON, Appellant
(105 S. E. (2d) 73)

402

*Messrs. Marshall B. Williams,* of Orangeburg, and *T. A. Houser,* of St. Matthews, *for Appellant,*

*Messrs. Julian S. Wolfe, Solicitor,* of Orangeburg, and *Henry L. Lake,* of St. Matthews, *for Respondent,*

September 22, 1958.

LEGGE, Justice.

At the September, 1957 term of the Court of General Sessions for Calhoun County, appellant was found guilty of the murder of his wife and was sentenced to death. His appeal charges error on the part of the trial judge:

1. In refusing his motion for change of venue;

2. In refusing his motion for continuance;

3. In refusing to order a new trial because of alleged illegality in the drawing of the extra venire;

4. In permitting the introduction of certain testimony; and

5. In permitting the Solicitor to explain the absence of two of the State's witnesses.

The body of appellant's wife was discovered on the night of August 12, 1957, in the trunk compartment of an automobile parked near the emergency room entrance of the Orangeburg Regional Hospital. Examination revealed five bullet wounds—in head, neck, both shoulders, and left arm, —each wound indicating that the bullet had been fired from behind the victim. There were multiple fractures of the left upper arm. Appellant, apprehended in Savannah, Georgia, on August 13, was brought to Orangeburg; and on the afternoon of that day he directed certain law enforcement officers to a secluded road in the neighboring county of Calhoun, where they found blood stains, six emptly .22-caliber cartridges, and a .22-caliber rifle. On August 14 appellant signed a confession, in which, after detailing his actions from the morning of August 12 until his arrest on August 13, he stated: "Alcohol and temporary insanity must have caused this."

The motion for change of venue, upon the ground that the defendant could not obtain a fair trial in Calhoun County, was supported by affidavits of the defendant (whose residence is in Orangeburg County), his counsel (of whom one resides in Orangeburg and the other in Calhoun County), a resident of Orangeburg County, and a right-of-way agent of the State Highway Department, residing in Saluda County, who was, in August, 1957, engaged in obtaining highway rights-of-way in Calhoun County. These affiants based their conclusion upon the widespread publicity and discussion that the crime had occasioned, and the fact that the deceased had been reared in Calhoun County, where she was very popular and had wide family connections. In opposition to the motion, four residents of Calhoun County, including the sheriff, were sworn and testified that although the crime had been publicized in the press and over radio and had been widely discussed, and although they had heard unfavorable opinions expressed concerning the defendant, they believed

he could obtain a fair trial in that county. In addition, the State offered affidavits of seven persons, for many years resident in Calhoun County, each of whom, after having read the newspaper accounts and heard the matter discussed by numerous residents, was of the opinion that no bias or prejudice existed against the defendant, and that he could obtain a fair and impartial trial in Calhoun County.

In his order denying the motion for new trial, the ▆ trial judge, discussing the motion for change of venue, pointed out, in addition to the comparative showing pro and con, that neither during the three days of the term that preceded the trial of this case, nor at any time during its trial, had anything occurred that might indicate that the defendant could not obtain a fair and impartial trial there. He noted also that the jurors had been placed on their voir dire and opportunity offered counsel to make inquiries in addition to those made by the court; that the questioning of the jurors developed nothing indicative of bias or prejudice against the defendant; and that of the ten peremptory challenges to which he had been entitled the defendant had used only four. The motion for change of venue was addressed to the judicial discretion of the trial judge. *State v. Mouzon,* 231 S. C. 655, 99 S. E. (2d) 672. We find no abuse of that discretion in his denial of the motion.

Upon the call of the case for trial, the defendant moved for continuance beyond the term upon the grounds urged in his motion for change of venue (which we need not discuss further), and upon the additional ground that he had not had sufficient time in which to prepare for trial.

As before stated, the crime was committed on August 12, 1957; the defendant was apprehended on August 13; and he gave a written confession on August 14. On August 14 the Solicitor applied for and obtained, *ex parte,* an order from the Resident Judge of the First Judicial Circuit committing the defendant "to the South Carolina State Hospital,

or to such portion of the Penitentiary as has been designated as a part of said hospital pursuant to Section 32-899.10 of 1956 Supplement to the South Carolina Code, for observation and examination as to his sanity." The order further provided that the Superintendent of said hospital should, at the end of thirty days, report to the court the result of said examination. Pursuant to this order the defendant was confined in the State Penitentiary in Columbia, South Carolina, where his examination and observation by the physicians of the State Hospital began on August 16 and was completed on September 16. As the result of this examination and observation, these physicians were of the opinion that he was sane; and presumably they so reported to the court on or shortly after September 16. The September term convened on September 23; and on that day the Grand Jury returned a bill of indictment charging the defendant with murder. He was thereupon arraigned and pleaded not guilty; and his counsel then moved for a continuance upon the grounds before stated. The motion was overruled, but with leave to the defendant to renew it on September 25, the case having been set for trial on the 26th. On the afternoon of September 25 the renewed motion was argued, and overruled; and the case was ordered for trial on September 26.

The affidavit of Mr. Williams, of Orangeburg, chief counsel for the defendant, in support of the motion for continuance, was substantially as follows:

On or about September 6, defendant's stepfather, Mr. Jameson, a client of Mr. Williams, spoke to him concerning the case, but no definite arrangements for his employment were then made, Mr. Williams informing Mr. Jameson that he would be unable to devote any time to the preparation of the case until after the term of the General Sessions court for Orangeburg County, which would commence on September 9, and throughout which Mr. Williams would be engaged. (In his appendix to the transcript, Mr. Williams states that in his conversation with Mr. Jameson on or about September 6 he advised him that, since the case

was to be tried in Calhoun County, the defendant should be represented by counsel from the bar of that county, and that Mr. Jameson, acting upon that advice, endeavored to employ counsel from that bar, but was unable to do so.) The Orangeburg court having adjourned on September 17, Mr. Williams immediately notified Mr. Jameson; and on September 18 Mr. Jameson conferred with Mr. Williams and employed him to represent the defendant. Mr. Williams thereupon proceeded to Columbia, and, after having conferred there with the defendant, went to St. Matthews, where he made arrangements with his co-counsel, Mr. Houser, to assist him in the defense of the case. Mr. Williams also states in his affidavit that on the occasoin of his interview with Mr. Jameson on or about September 6 he felt, and so advised Mr. Jameson, that it would be improper to attempt to interview the defendant so long as he was in the custody of the authorities of the State Hospital and undergoing examination with regard to his sanity.

This aspect of the appeal has given us great concern. A motion for continuance is, of course, addressed to the sound discretion of the court. Where such motion has been based upon the contention that defendant's counsel has not had time to prepare his case, its denial by the trial court has rarely been disturbed on appeal. It is axiomatic that determination of such motions must depend upon the particular facts and circumstances of each case. In *State v. Middleton,* 207 S. C. 478, 36 S. E. (2d) 742, where counsel, appointed by the court at least eight days prior to the trial, moved for continuance upon the ground that they did not think that time sufficient for preparation of the case for trial, we held that the motion was properly denied. And in *State v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850, 853, denial of a like motion was upheld where counsel for the defendant had been appointed by the court "three or four" days prior to the date of trial.

But the factual situation in each of the cases just cited was far different from that which confronts us here. In

the *Middleton case* the crime had been committed on September 7, 1944; and the case was first tried on the 22nd day of that month, the defendant being represented by counsel of his own selection. A mistrial resulted. At the next term the case was set for trial on December 15, 1944; and on December 14 the defendant's attorney withdrew from the case with defendant's consent. The case was then continued to the March, 1945 term, and upon its call on March 5, the defendant stating that he had no attorney, the trial judge on March 6 appointed two attorneys to represent him and set the case for trial on March 14. These attorneys were furnished with the transcript of the previous trial; they put up witnesses for the defense, including one who had been absent when the motion for continuance was first made, but who had arrived from a distant state in time to testify; and the record showed that the defendant's case was fully presented on its merits. In the *Livingston case* the crime was committed on March 30, 1952; the defendant was apprehended on April 10; and the trial was on May 12. Defendant's counsel, appointed by the trial judge "three or four" days prior to the trial, appears to have presented the case on its merits; and this court, commending him for his diligent efforts, declared in effect that he had done everything that could possibly have been done for his client under the circumstances.

In the case at bar defendant's chief counsel, an able and experienced trial lawyer whom this court holds in high esteem, presented no evidence whatever for the defense. The defendant's affidavit in support of the motion for change of venue hinted that the validity of his written confession might be questionable; but at the trial there was not the slightest suggestion of its invalidity. His confession concludes with the statement that "alcohol and temporary insanity must have caused this"; yet no testimony was offered on his behalf on either point, although the State (1) produced several witnesses who testified to his sobriety on the day of the crime, and (2) offered evidence of his sanity at the time of his

examination by the physicians of the State Hospital. The only suggestion of his possible mental derangement, other than the statement in the confession, appears in the argument of his counsel on the renewed motion for continuance, to the effect that there was a man residing in Colorado who could testify as to defendant's "mental condition" during combat service in the Korean war. What his mental condition was at that time was not stated in counsel's argument. No relative, no close associate, no physician was offered as a witness with regard to his mental condition on or near the date of the crime. Rightly or wrongly, defendant's counsel concluded, when he was approached by defendant's stepfather on September 6, that it would be improper for him to attempt to confer with the defendant during the period of his examination by the authorities of the State Hospital. In short, he has chosen to rest his client's case solely upon the claim (hereinbefore discussed and rejected) that the venue should have been changed, upon the contention that he had not sufficient time to prepare for trial on the merits, and upon technical objections relating to the jury, the admission of certain evidence, and an explanatory remark made by the Solicitor. No theory of defense on the merits was suggested in the lower court; and in this state of the record we cannot intelligently determine whether in fact the defendant has no defense or whether, had the continuance been granted, his counsel would have presented one.

We gravely doubt that the trial judge, in denying the motion for continuance, abused his discretion; but we have concluded, *in favorem vitae,* that the circumstances in this case warrant a new trial. If in ordering it we err, at least such error has not the finality that affirmance on the present record would have. Upon such trial, if the defendant has a defense, let it be presented; if he has none, let the jury so determine by their verdict. But let him not be able to say, upon that trial, that he has not been allowed sufficient time for the preparation of his case.

Although the issue is now academic and may not arise at the next trial, we shall touch briefly on appellant's contention that the extra venire was illegal because not publicly drawn. It appears that on September 24, a deficiency in the number of petit jurors having developed, an extra venire was ordered drawn from the tales box (Code, 1952, Sections 38-60, 38-72) ; and at the request of the jury commissioners, who had brought the jury box to the court room, the trial judge permitted the box to be taken to his chambers, immediately adjoining the court room, and there the commissioners proceeded to draw the extra jurors. In his order denying the motion for new trial, the trial judge states: "The drawing of the extra jurors was public, the door to the judge's chambers was open into the court room, and others besides the jury commissioners were present during the drawing, including myself during most of the time."

Section 38-63 of the 1952 Code, relating to the drawing of the regular venire of petit jurors in advance of the term, provides that "such drawings shall be made openly and publicly in the office of the clerk of court of common pleas and the jury commissioners shall give ten days' notice of the place, day and hour of each of such drawings by posting in a conspicuous place on the courthouse door or by advertisement in a county newspaper."

Section 38-72, relating to the drawing of a special venire to supply any deficiency in the number of grand or petit jurors, provides that "the jury commissioners, under the direction of the court, shall draw from the tales box such number of fit and competent persons to serve as jurors as the court shall deem necessary to fill such deficiency."

And Section 38-74 declares that "in drawing jurors from the tales box the same rules shall be observed as in drawing from the jury box, except that no notice of such drawing shall be necessary."

It is to be noted that under these statutes the drawing of the regular venire is required to be publicly made, in the clerk's office, after ten days' public notice; but that no notice of the drawing of an extra venire is required, nor is the place of such drawing specified, nor is there any express provision that such drawing shall be public. Section 38-72 requires only that the extra venire shall be drawn "under the direction of the court." The meaning, in 38-74, of "the same rules  *  *  *  as in drawing from the jury box", is not clear, and we need not undertake to decide it now. It may refer to the rules requiring a public drawing in the clerk's office, construed with 38-72 it may be taken as referring only to the mechanics of the drawing. If, as the trial judge suggests in his order denying the motion for new trial, the intent of the statute is that the drawing of the extra venire shall be public, we do not agree with him that a drawing in the judge's chambers conforms with that intent. To the average layman, the clerk's office is a public place into which he may go freely at any time; but the judge's room is a place of rather awesome judicial privacy, whether or not it may adjoin the court room, and whether or not its door may be left open. But we do not find reversible error in the mere fact that the extra venire in the case at bar was drawn there. Section 38-214 of the 1952 Code declares that "no irregularity  *  *  *  in the drawing  *  *  *  of jurors shall be sufficient to set aside the verdict. unless the party making the objection was injured by the irregularity or unless the objection was made before the returning of the verdict." Here objection was not made until after the verdict, and injury has not been shown. Cf. *State v. Harreld,* 228 S. C. 311, 89 S. E. (2d) 879.

The remaining questions raised by the appellant we shall discuss briefly, not because their decision is necessary on this appeal, but in order that our view of them may serve as a guide in the event that any of them should arise in the course of the new trial.

Dr. Eaddy, one of the "team" of five physicians of the State Hospital who conducted the month-long examination of the defendant by tests and observation relative to his sanity, testified: (1) that as the result of that examination it was his opinion that the defendant was then sane; and (2) that such was the unanimous opinion of the "team". His testimony, when offered, was objected to upon the grounds: (1) that the defendant's examination while under arrest violated the constitutional guarantee against compulsory self-incrimination; and (2) that the State had no right to contradict the defendant's confession, which it had put in evidence, and which, as before mentioned, concluded with the suggestion that the crime had been committed when the defendant was temporarily insane. The first of these grounds of objection is untenable, *State v. Myers,* 220 S. C. 309, 67 S. E. (2d) 506, 32 A. L. R. (2d) 430; and so also is the second, *State v. Green,* 213 S. C. 170, 48 S. E. (2d) 641.

On the motion for new trial it was also contended that all of Dr. Eaddy's testimony was irrelevant because it did not relate to the defendant's mental state at the time of the commission of the crime. There is, in every criminal case, the presumption of the defendant's sanity. The State may rely upon that presumption or, if contention of insanity is suggested (as by the concluding words of the confession here), it may present testimony in anticipation of such contention. That this testimony related to the defendant's mental condition a few days after the crime rather than at the moment or on the day of its commission did not render it irrelevant. The trial judge, in the exercise of his discretion, properly held it relevant; its weight was for the jury.

As to so much of Dr. Eaddy's testimony as related to the opinion of the other physicians on the examining team, contention was made on the motion for new trial, and rejected, that it was hearsay. So it was, in our opinion, and it should have been excluded.

In response to a question by the Solicitor as to whether in the State Penitentiary there is a special section in which are placed persons who are to be observed and treated by members of the staff of the State Hospital, Dr. Eaddy replied: "Yes, sir, a part of the Penitentiary is set aside on paper, but actually no room is numbered or named. We have patients over there, some that are too dangerous to take care of in the State Hospital. We examine some at the State Hospital. Some come to the State Hospital and then go back." Appellant, who made no objection to this testimony when it was offered, and did not, on his motion for a new trial, contend that it was objectionable, now urges that it was an attack upon his reputation, and therefore improper because he had not put his reputation in issue. The contention is without merit.

Exception 15 charges error in permitting the Solicitor to ask the witness J. L. Gammon to repeat a conversation that he had had with the deceased some four days prior to her death. No objection was made to the question or to so much of the answer as related to a statement made by the witness to the deceased on the occasion in question. Only when the witness started to repeat what Mrs. Livingston had said in reply to his statement was objection made. The jury was thereupon excused, and the witness proceeded to repeat what Mrs. Livingston had said to him. The trial judge ruled that part of his testimony irrelevant; and the jury was brought back into the court room. We find no error here.

There is no merit in appellant's contention that it was improper for the Solicitor to state, in explanation of the absence of two witnesses to the defendant's confession, that they were engaged on official business in another county. In the first place, no objection was made to the Solicitor's statement; in the second, there was no impropriety in it.

Reversed and remanded for new trial.

STUKES, C. J. and TAYLOR and Moss, JJ., concur.

E. H. HENDERSON, Acting Associate Justice.

I respectfully dissent, as I do not think there was prejudicial error on the part of the Circuit Judge at any stage of the trial. I believe that his order refusing to continue the case was well within the borders of his discretion. In my opinion the judgment of the Circuit Court should be affirmed.