17598

STATE, Respondent, v. William Otis BRITT, and Douglas WESTBURY, Appellants

(111 S. E. (2d) 669)

*Messrs. James N. Rahal,* of Savannah, Georgia, and *Claud N. Sapp, Joseph D. Sapp* and *Ben M. Sawyer, Jr.,* of Columbia, *for Appellant, William Otis Britt,*

*Messrs. C. Walker Limehouse* and *Henry R. Sims II,* of Orangeburg, *for Appellant, Douglas Westbury.*

*Julian S. Wolfe, Esq., Solicitor,* of Orangeburg, *for Respondent,*

December 17, 1959.

Moss, Justice.

Upon an indictment charging them with the murder of Harry Boyd Ray on September 7, 1958, William Otis Britt and Douglas Westbury, the appellants herein, and Lee von Tilson, were tried at the January, 1959, term of Court of General Sessions for Orangeburg County, South Carolina. Tilson was found guilty of murder with recommendation to mercy, and has not appealed his conviction. The appellants were found guilty of murder and sentenced to death by electrocution. They have appealed to this Court from such conviction and sentence.

The indictment charged the appellants and Tilson with murder, the homicide having occurred in Orangeburg County, South Carolina, on September 7, 1958. The Grand Jury of the county returned a true bill of indictment against the three defendants on September 15, 1958. They were duly arraigned and entered a plea of "Not Guilty". A motion for a continuance was made and granted.

This case was called for trial at Orangeburg, South Carolina, on January 5, 1959, and the appellants made motions for (1) Change of venue; (2) Continuance beyond the term; and (3) For severance of the trials of the respective defendants. The motions were fully argued before the Court and denied. The questions raised by the appellants will be considered *seriatim*.

The ground of the motion for a change of venue was that the appellants could not obtain a fair and impartial trial in Orangeburg County for the reason that certain articles appearing in the newspapers, having a circulation in said county, were prejudicial and would substantially impair the rights of the appellants to be tried before an impartial and dispassionate jury. It was also asserted that these articles appeared in the newspapers on December 16, 1958. The appellants also assert that certain magazines appearing upon the public newsstands in the County of Orangeburg carried

articles about the case which were detrimental and prejudicial to the rights of the appellants. The appellants also made a motion for a continuance of the case beyond the term on the ground that they could not obtain a fair and impartial trial due to the adverse and hostile public sentiment existing in the county.

This Court has held in numerous cases that a motion for a change of venue is addressed to the discretion of the trial Judge and his disposition of such motion will not be reversed unless it is shown that there was an abuse of such discretion to the prejudice of the appellants. *State v. Byrd*, 229 S. C. 593, 93 S. E. (2d) 900; *State v. Whitener*, 228 S. C. 244, 89 S. E. (2d) 701; *State v. Livingston*, 233 S. C. 400, 105 S. E. (2d) 73, and *State v. Mouzon*, 231 S. C. 655, 99 S. E. (2d) 672. We have also held that where a defendant applies for a change of venue on the ground that an impartial jury cannot be obtained, it is the duty of the trial Judge to make an examination and inform himself of the truth of the averments, and where, after hearing evidence, the trial Court is satisfied that a fair and impartial jury may be had in the County where the crime was alleged to have been committed, his refusal to change the venue will be sustained, except in the case of an abuse of discretion. *State v. Thomas*, 198 S. C. 519, 18 S. E. (2d) 369.

It appears from the record that Harry Boyd Ray was employed as a Highway Patrolman. He was born in Barnwell County and resided with his family in Clarendon County. It was his duty to patrol a small section of the highways in Orangeburg County. There is no showing of any popularity of the deceased in said county.

The motion for a change of venue was supported only by an affidavit of counsel for one of the appellants, and this set forth only a conclusion. The Sheriff of Orangeburg County testified that he had not heard of any threats against the appellants nor anything that would indicate that the passions of the people of the county were aroused against them.

The trial Judge, in connection with the motion for a change of venue, had all of the jurors sworn and he examined them in detail and separately on their *voir dire*. He examined each as to (1) opposition to capital punishment, (2) relationship to the deceased or to the accused, (3) whether or not they had formed or expressed an opinion as to the guilt or innocence of the accused, or any of them, (4) as to bias or prejudice either for or against the appellants, (5) whether they were conscious of anything that would prevent the jurors from giving a fair and impartial trial under the evidence and the law, and (6) whether any of the jurors had been a member of the Grand Jury that had returned an indictment against the appellants. All of the jurors, with three exceptions, answered each question so propounded in the negative. At the conclusion of the foregoing examination, the trial Judge said: "I have no evidence whatsoever that they (referring to the appellants) cannot get a fair and impartial trial in this County. As a matter of fact, the overwhelming evidence is to the contrary." A review of the entire record, in support of the motion for a change of venue, convinces us that the trial Judge wisely exercised his discretion in refusing to grant the motion.

The appellant, Douglas Westbury, requested the trial Judge to propound additional questions to the jurors under the *voir dire* examination. A review of the proposed questions submitted by the said appellant convinces us that the questions that were propounded to the jurors by the trial Judge, in effect, covered the additional requests. The trial Judge, in our opinion, conformed to Section 38-202 of the 1952 Code of Laws of South Carolina, which provides:

"The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror therein to know whether he is related to either party, has any interest in the cause, has expressed or formed any opinion or is sensible of any bias or prejudice therein and the party objecting to the juror may introduce any other competent

evidence in support of the objection. If it appears to the court that the juror is not indifferent in the cause, he shall be placed aside as to the trial of that cause and another shall be called."

In the case of *State v. Bethune,* 93 S. C. 195, 75 S. E. 281, 282, this Court said:

"* * * After the statutory questions have been asked and answered, any further examination of a juror on *voir dire* must be left to the discretion of the trial judge, which is subject to review only for abuse thereof."

This Court has also held that the scope and limits of the interrogation of a juror on *voir dire* is within the sound discretion of the Circuit Judge, and it is for him to determine the character of the questions proposed and when the examination shall cease. *State v. Carson,* 131 S. C. 42, 126 S. E. 757; *State v. Nance,* 25 S. C. 168, and *State v. Coleman,* 8 S. C. 237. We conclude that there was no error on the part of the trial Judge in failing to ask the jurors the additional questions proposed by the appellant.

The appellants assert that the trial Judge committed error in refusing to grant a continuance in this case. This Court has held in numerous cases that a motion for a continuance is addressed to the discretion of a trial Judge and his disposition of such motion will not be reversed unless it is shown that there was an abuse of such discretion to the prejudice of the appellant. *State v. Lytchfield,* 230 S. C. 405, 95 S. E. (2d) 857, 66 A. L. R. (2d) 263; *State v. Livingston,* 223 S. C. 1, 73 S. E. (2d) 850, and *State v. Mishoe,* 198 S. C. 215, 17 S. E. (2d) 142. The basis of the appellants' motions was that they could not obtain a fair and impartial trial because of adverse and hostile public sentiment. What we have heretofore said in discussing the motions for a change of venue is applicable to the motions for continuance. We conclude that there was no error on the part of the trial Judge in refusing the motions made for a continuance.

On the call of this case for trial both appellants moved the Court for a separate trial upon the grounds that the defenses of the appellants are antagonistic to one another; that evidence in favor of one appellant would be admissible on a separate trial and would not be allowed on a joint trial; that evidence incompetent as to one of the appellants and introduced against the other appellant would work prejudicially to the other appellant; and that a confession by one of the appellants, if introduced and proved, would be calculated to prejudice the jury against the other appellant.

It appears from the record that the appellants and Tilson left Charleston, South Carolina on September 5, 1958, and traveled through South Carolina and as far north as Raleigh, North Carolina. It was the united purpose of the three to commit robberies. The three returned to South Carolina on the night of September 6, 1958, and while traveling south on U. S. Highways Nos. 15 and 301, stopped at a restaurant in Orangeburg County. After remaining in the restaurant for some time, the three entered a motel on said highways and robbed the owners thereof of a large sum of money. The three hurriedly left the scene of the robbery in an automobile with Tilson driving, and approximately one-half a mile south on said highways, the car in which they were riding was stopped by Harry Boyd Ray, a State Highway Patrolman, evidently for speeding. Each of the appellants, and Tilson, made a written confession. These confessions concur as to many of the facts and details of the death of the patrolman. It was contended by the appellant Britt, and Tilson, that Westbury fired the shots that took the life of the patrolman. Westbury contends that he did not fire the fatal shots. He stated in his confession that he got out of the car and shot into the air after the patrolman had been shot. The dispute in the confessions as to who fired the fatal shot that took the life of the patrolman is the basis upon which the appellants assert that their defenses were antagonistic.

It has been repeatedly held by this Court that a motion for a severance and separate trial on the part of one or more defendants in a case, where several persons are jointly charged with a criminal offense, is addressed to the discretion of the trial Judge, and only an abuse of that discretion constitutes reversible error. *State v. Brown,* 108 S. C. 490, 95 S. E. 61; *State v. Jeffords,* 121 S. C. 443, 114 S. E. 415; *State v. Bagwell,* 128 S. C. 414, 122 S. E. 513; *State v. Francis,* 152 S. C. 17, 149 S. E. 348, 70 A. L. R. 1133; *State v. Rook,* 174 S. C. 225, 177 S. E. 143; *State v. Mathis,* 174 S. C. 344, 177 S. E. 318; *State v. Atkins,* 205 S. C. 450, 32 S. E. (2d) 372; *State v. McCracken,* 211 S. C. 52, 43 S. E. (2d) 607; *State v. Hurt,* 212 S. C. 461, 48 S. E. (2d) 313; *State v. McIntire,* 221 S. C. 504, 71 S. E. (2d) 410, and *State v. Sanders,* 227 S. C. 287, 87 S. E. (2d) 826.

In the case of *State v. Brown, supra,* three of the defendants based their motion for a severance on the ground that their defenses were antagonistic to the defenses of the other two defendants in the case. This Court affirmed the ruling of the trial Judge refusing severance.

In the case of *State v. Jeffords, supra,* the defendant made a motion for a severance because the other two defendants, jointly indicted with Jeffords for murder, had given detailed confessions as to the circumstances of the killing. The motion for a severance was refused by the trial Judge and this Court affirmed such ruling.

In the case of *State v. Francis, supra,* this Court held that the trial Judge did not abuse his discretion in refusing a severance on the ground that some of the defendants were strangers to others, would have different defenses, and that right of challenge to jury would be affected.

In the case of *State v. Atkins, supra,* the defendants moved for severance and a separate trial upon the ground that the defenses of the two defendants would be altogether different and inconsistent; that testimony to be offered by

the prosecution would be admissible and relevant as to one, but inadmissible and incompetent as against the other; and that the facts which affect one would not involve the other. The trial Judge denied the motion for severance and a separate trial and this Court affirmed the ruling of the lower Court.

In the case of *State v. Mathis, supra,* this Court affirmed the trial Judge's refusal of a motion for severance made on the ground that the State would offer evidence of threats having been made by one of the defendants against the deceased, and that such testimony would be inadmissible, but prejudicial to the other defendant. In the *Mathis case* the trial Judge held that a statement made by one of the defendants is evidence against only the one making the statement. A like ruling was made by the trial Judge in this case when he held that the confession made by one of the defendants was only admissible against the defendant making such confession.

We see no abuse of discretion on the part of the trial Judge in refusing to grant the motion made for severance and a separate trial.

After the jury was impaneled and sworn, counsel for the appellants made a motion that the trial Judge sequester all witnesses in the case. However, at the request of the Solicitor, the trial Judge permitted the Sheriff, a deputy Sheriff, Lt. Carl Fairey of the State Highway Patrol and Chief J. P. Strom of the South Carolina Law Enforcement Division, to remain in Court for the purpose of assisting the Solicitor. The appellants assert that the trial Judge was in error in refusing to sequester these four witnesses. In *State v. O'Neal,* 210 S. C. 305, 42 S. E. (2d) 523, 526, this Court said:

"The granting or refusing of a motion for separation or sequestration of witnesses is within the sound discretion of the trial judge. It is within the power of the trial court to exclude witnesses from the court room during the trial, and

to direct that they shall be examined out of the hearing of one another, or shall be 'put under the rule,' as it is frequently termed. 23 C. J. S. Criminal Law § 1010, p. 377.

"While an order excluding witnesses is as a matter of fact rarely withheld if it is applied for by either party in good faith, as a general rule the party is not entitled to an order of exclusion as a matter of right and the motion may be refused if the court in the exercise of a sound discretion does not deem that there are sufficient grounds therefor."

In 23 C. J. S. Criminal Law § 1011, p. 381, it is said:

"The trial court has authority to exempt particular witnesses from the operation of the rule or order for exclusion or sequestration. The question as to what witnesses may be exempted is largely a matter within the discretion of the court, and, even after the granting of the rule or order excluding or sequestering the witnesses, it is within the discretion of the trial court to permit some of them to remain in the court room and afterward to testify if the circumstances require it. Accordingly it is within the sound discretion of the court to permit a limited number of witnesses to remain for the purpose of assisting the prosecution or accused. The discretion of the court with regard to exemptions or exceptions is not, however, an arbitrary one."

In the case of *State v. Johnson*, 156 S. C. 63, 152 S. E. 825, 827, the defendants were charged with murder. Upon the trial of the case the defendants moved that the witnesses be segregated and excluded from the court room. The trial Judge allowed a witness who was accompanying the deceased at the time he was shot to remain in the court room for the purpose of aiding the Solicitor. Upon appeal, alleging error, this Court affirmed the ruling of the trial Judge, saying:

"It appears that the witness Green was accompanying the deceased in the automobile at the time he was shot; he was a very material witness and his presence during the examination of witnesses, in aid of the solicitor, was apparent; the presiding judge, we think, wisely exercised his discretion in allowng him to remain."

We do not think the trial Judge abused his discretion in permitting the four officers to remain in the court room for the purpose of aiding and assisting the Solicitor.

The appellant, Westbury, takes the position that the record does not show that he was present at the time the trial Judge conducted the *voir dire* examination of the jurors. He asserts that the record must affirmatively show that the defendant was present at the time of such examination. He likewise asserts that his presence is a condition of due process under the Fourteenth Amendment to the Constitution of the United States. The record does not reveal whether this appellant was present or absent at the time the *voir dire* examination was conducted.

In the case of *State v. Jones,* 211 S. C. 319, 45 S. E. (2d) 29, 31, the indictment charged the defendant with committing an assault and battery with intent to kill upon one Willie Cantrell. It appeared upon the face of the indictment more than once that the name of "Roxie Lee Cantrell" originally written therein, was stricken out and the name of "Willie Cantrell" substituted. The defendant moved to quash the indictment on the theory that there had been a substitution of the name of the person upon whom the assault had been committed, after a true bill had been returned by the Grand Jury. Upon an appeal from a conviction and sentence this Court held that there was nothing in the record to suggest or indicate the substitution of the names complained of by the appellant was not duly made by the Solicitor before he submitted the indictment to the Grand Jury. This Court, in affirming the lower Court and overruling the exception of the appellant posing this question, said :

"Under these circumstances, a legal presumption will be indulged, in the absence of a showing to the contrary, that the indictment was duly returned by the grand jury to the court of general sessions of Greenville County in open court, with the name of Roxie Lee Cantrell stricken out and the name of Willie Cantrell, the person assaulted, substituted

therefor. The record shows nothing to the contrary, and in the absence of evidence, the regularity and legality of the proceedings in the court of general sessions of Greenville County will be assumed. *State v. Waring,* 109 S. C. 52, 95 S. E. 143; 24 C. J. S. Criminal Law § 1850."

In the case of *State v. Waring,* 109 S. C. 52, 95 S. E. 143, 144, it appears that the defendant was tried for murder and was convicted of manslaughter. He applied for a *writ of habeas corpus* seeking to be discharged from custody upon the ground that the sentence was based upon an illegal verdict. The record shows that when the jury returned to the court room, with their verdict, there was endorsed upon the indictment "Manslaughter". It is not clear from the statement of the case, but we can assume that the appellant took the position that the clerk, after reading the verdict of the jury, failed to ask the jury "And this is your verdict, so say ye all." The Court, in disposing of this contention, said:

"The court of sessions is a court of general jurisdiction, and all things are presumed as to the regularity of the proceedings. We must therefore presume that when the clerk read the writing on the indictment he asked the jury, 'And this is your verdict, so say ye all.' The case does not show that any juror replied in the negative, or in any way expressed a dissent."

In the case of *State v. Hollman,* 232 S. C. 489, 102 S. E. (2d) 873, 878, the appellant suggested that he was deprived of the right to trial by jury, and therefore denied due process of law, because the petit jury was not sworn as required by Section 38-210 of the 1952 Code of Laws of South Carolina. This contention was based solely upon the fact that the record for appeal does not show that the jury was sworn. This Court rejected the contention of the appellant, saying:

"* * * Rule 4 of this court, prescribing the contents of the transcript of record on appeal, does not require inclusion therein of a statement that the jury was sworn. Section 3 of that rule expressly provides that the 'statement' shall be concise and shall contain nothing that is not necessary to

a proper understanding and decision of the questions to be decided. Cf. *Spartan Mills v. Law,* 186 S. C. 61, 194 S. E. 653; *Franks v. Anthony,* 231 S. C. 191, 97 S. E. (2d) 891. The record before us discloses no factual basis to support the conclusion either that the jury was not duly sworn or that the fact of such swearing is not shown in the record of the trial in the office of the clerk of the lower court. No such issue is made by any of the 'Grounds For Appeal'. No such defect in the trial record is to be presumed. On the contrary, presumption is always that a public officer has faithfully and correctly performed his official duties. 20 Am. Jur., Evidence, Section 170, p. 174; 43 Am. Jur., Public Officers, Section 511, p. 254; *Howell v. Littlefield,* 211 S. C. 462, 46 S. E. (2d) 47; *Whitmire v. Cass,* 213 S. C. 230, 49 S. E. (2d) 1."

The question now argued by the appellant, Westbury, was not raised by any of his exceptions. Hence, it was not necessary for the records to show affirmatively, under the rules of this Court, that the appellant was present when the trial Judge conducted the *voir dire* examination of the jurors. We will assume that if the question had been raised by proper exception the record would have indicated either the presence or the absence of the appellant at such time. We will, therefore, presume that the trial Judge conducted the *voir dire* examination of the jurors in the presence of the appellant. This exception is overruled.

The appellant Britt charges the trial Judge with error in failing to excuse the jury in order to permit the cross examination of the witness, Strom, concerning the voluntary nature of the confessions made by the defendants.

It appears from the evidence that the confessions made by the appellants, and Tilson, were made without inducements of any nature and that they were warned that any statement made by them might be used against them. The witness Strom testified that the statements were freely and voluntarily given, and that the appellants were not intimidated, abused or threatened in any

manner. No evidence was offered in behalf of the appellants to the contrary. We have held that the question of whether a confession is voluntary is one which is addressed to the Court in the first instance. If there is an issue of fact as to the voluntariness of the confession, it should be admitted, and the jury, under proper instructions, allowed to make the ultimate determination as to its voluntary character and also its truthfulness. *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880, 884. It was also testified that the appellants were furnished a copy of their written confessions and signed a receipt therefor in compliance with Sections 1-64 and 26-7.1 of the 1958 Cumulative Supplement to the 1952 Code of Laws of South Carolina.

We point out that when the confessions of the appellant Britt, and Tilson, were offered in evidence, that counsel for them said: "No objections as to the confessions of William Otis Britt and Lee von Tilson." The appellant Britt, in view of the statement of his counsel, is not in position to complain of the introduction of his confession as evidence, when he expressly consented thereto, even though the preliminary examination as to its admissibility was conducted in the presence of the jury.

In the case of *State v. Chasteen, supra,* it was charged that the trial Judge committed error in conducting the preliminary inquiry as to the voluntariness of a confession in the presence of the jury. What we said in the cited case is applicable here:

"The better practice is for the trial Judge to conduct the preliminary inquiry and determine the admissibility of the confession in the absence of the jury. 20 Am. Jur., Evidence, Section 534; Annotation 148 A. L. R., beginning on page 546. There is authority to the effect that where this is not done and the Court thereafter determines the confession to be inadmissible, prejudicial error results. That question is not now presented and we intimate no opinion thereabout. The great weight of authority is that where, as here, the confessions are finally determined to be admissible, any

error in conducting the preliminary examination in the presence of the jury is cured. On page 550 of the annotation in 148 A. L. R., it is stated: 'If the trial court after the preliminary examination determines that the confession was voluntarily made, its failure to conduct such examination in the absence of the jury is not ordinarily regarded as reversible error.' In addition to the cases cited by the annotator in support of this view, see *Kirk v. Territory,* 10 Okl. 46, 60 P. 797.

"We conclude that no harm resulted in the instant case from the fact that on several occasions the preliminary examination as to the voluntariness of the confessions was made in the presence of the jury. Nor do we think there was any prejudicial error in ruling in the presence of the jury that the confessions were admissible. The trial Judge announced his decision in a most formal way without any intimation as to the weight of the evidence. In *State v. Marlowe,* 156 S. C. 363, 153 S. E. 340, the Court, in an opinion by Mr. Chief Justice Watts, held it was not reversible error to hear and refuse a motion for a directed verdict of not guilty in the presence of the jury. The better practice, however, is to excuse the jury." See in this connection *State v. Sanders,* 227 S. C. 287, 87 S. E. (2d) 826.

We think that there was no error on the part of the trial Judge in admitting as evidence the confession of the appellant Britt. Since the confession was properly admitted, any error in conducting the preliminary examination in the presence of the jury was cured.

When the witness Strom was testifying as to the confessions and had been asked a number of questions thereabout, the trial Judge interposed the following: "Now you have covered the thing completely except one little thing, were they freely and voluntarily given? The questions you asked tend to show that but I think you might ask that." Thereupon, the Solicitor asked the witness concerning the confessions "Were the statements freely and voluntarily given?" The witness answered "Yes, sir." The

appellant, Westbury, asserts that it was error for the trial Judge to make the foregoing comment. However, previous to this comment by the Court, the Solicitor had already asked the witness: "Mr. Strom, were these statements given freely and voluntarily?" His answer was "Yes, sir." The evidence elicited at the suggestion of the trial Judge had already been given as is shown by the above quotation from the record. The additional question asked by the Solicitor, at the suggestion of the trial Judge, was simply a repeat of a question which had already been asked, and answered by the witness. The appellant asserts that the trial Judge, by making the above suggestion, was commenting on and expressing an opinion on the evidence and that such statement was calculated to influence the jury. We do not think that the suggestion made by the trial Judge could possibly have the effect complained of by this appellant. The suggestion made by the trial Judge did not indicate to the jury any opinion as to the appellant's guilt or as to the weight or sufficiency of the confession. He was seeking to elicit information relevant to the admission of the confession into evidence, which he evidently thought had not been sufficiently brought out by the Solicitor. See in this connection the cases of *State v. Anderson,* 85 S. C. 229, 67 S. E. 237 and *State v. Faulkner,* 151 S. C. 379, 149 S. E. 108. This exception is overruled.

The appellant, Westbury, asserts that the trial Judge committed error in limiting the scope of the cross examination of R. E. Tuttle, a witness for the State, so as to exclude evidence of previous convictions of the appellant Britt, and Tilson. We should point out that counsel for the appellant Westbury stated that he was willing to plead him guilty with a recommendation to mercy. The State refused to accept such a plea.

Counsel for the appellant Westbury attempted to cross examine R. E. Tuttle, a city detective on the Savannah Police Department, as to the record of Britt and Tilson with respect to convictions of armed robbery and grand larceny.

The attorneys for Britt and Tilson objected on the ground that such evidence would put the character of the appellant and Tilson in issue. It was the theory of counsel for Westbury that the testimony was admissible for the purpose of attacking the credibility of Britt and Tilson who had made accusations against Westbury in their oral statements and written confessions.

Where the separate statement or confession of either of these parties implicated the others the trial court properly admitted such statement or confession against the person who made such, and he also correctly ruled that the statement or confession could not be considered against the others. He likewise charged the jury to this effect. *State v. Bagwell,* 201 S. C. 387, 23 S. E. (2d) 244 and *State v. Jeffords,* 121 S. C. 443, 114 S. E. 415.

In the *Jeffords case* this Court said:

"The next assignment of error is in allowing confessions of Harrison and Treece to be introduced in evidence, in so far as they contained accusations of Jeffords. The rule is very clear that the confessions must be given as made. If we strike out any part, then the confession ceases to be the confession as made. The rule in such cases is clearly to let all the defendant said be given, and the jury cautioned not to consider it against any one, except the man who makes it. This is unquestionably the rule, and it was strictly and scrupulously followed."

Since the trial Judge ruled that any statement or confession made by either Britt or Tilson could not be considered as evidence against Westbury, the question of the credibility of Britt and Tilson was not at issue insofar as Westbury was concerned. If either Britt or Tilson, or both of them, had taken the witness stand and testified in their own behalf and had given damaging testimony against Westbury, it would have been proper for counsel for Westbury to cross examine them on matters material to Westbury, and particularly to examine them as to any of their past transactions tending to affect their credibility as

witnesses. They could have been confronted with the record showing their convictions of the crimes of robbery and grand larceny because such evidence would have been admissible in impeachment of their testimony. It has been held that when a defendant goes upon the witness stand he thereby subjects himself to all the incidents of a regular witness, and his general reputation for truth and veracity may be impeached. It would have been proper to impeach the credibility of Britt or Tilson, had they been sworn as witnesses, by production of the record of their convictions of an infamous offense, such as robbery and grand larceny. However, neither of them were sworn as witnesses and their reputation for truth and veracity was not at issue in this case. Hence, evidence of prior convictions of infamous offenses was not admissible. The exception posing this question is overruled.

The appellant Britt asserts that it was prejudicial error for the Court to admit evidence attacking his character and reputation where the issue was not first tendered by him.

When R. E. Tuttle, a witness for the State, and who was a city detective with the Savannah Police Department, was being cross examined by the attorney for the appellant Westbury, the following took place:

"Mr. Limehouse: I don't want to start a riot here, Your Honor, but I would like to ask if they were known to the Department?

"Mr. Rahal: Now, Your Honor, I think that remark is improper and highly prejudicial.

"The Court: He didn't say that they were. He said he wanted to ask if they were known to the Department.

"Mr. Rahal: I don't know what he has reference to.

"The Court: As I understand it, there seems to be some disagreement among the accused themselves as to who did what. Now, if either Britt or Tilson had been previously convicted of one of the *crimen falsi,* one of the infamous offenses, murder, rape, burglary, certainly larceny, then that

would be admissible on the question of the veracity of the witnesses. That would go to the credibility of the witnesses.

"Mr. Rahal: We had not put them up yet.

"The Court: No, but it might help to keep you from putting them up.

\* \* \*

"The Court: Offhand, I don't see the relevancy of whether they were known to what, the Police Department?

"Mr. Limehouse: Yes, sir, the Police Department.

"The Court: Of the City of Savannah?

"Mr. Limehouse: Yes, sir.

"The Court: In that form I don't think the question is proper. Might have been arrested for vagrancy some time when they got out of work back in the depression, or they might have been arrested for being drunk some time. They tell me that some young men sometimes do get drunk. That would not be relevant to this inquiry.

"Mr. Limehouse: May I ask the witness if he is familiar with the record of either William Otis Britt or Lee von Tilson with respect to any convictions of armed robbery, grand larceny?

"Mr. Rahal: I object, Your Honor.

"The Court: It would take the record, wouldn't it?

"Mr. Limehouse: Sir?

"The Court: I think it would take the record to prove it, wouldn't it?

\* \* \*

"Mr. Limehouse: Do you have the record with you?

"A. I have a copy of the record. I have one taken from my record before I left Savannah and I have the dates and what they were charged for and what with.

"Mr. Limehouse: I ask that that be submitted in evidence, Your Honor.

"Mr. Rahal: Now, Your Honor, I object to that on the grounds that they are putting the character of the defendants in issue.

"Mr. Limehouse: I am offering it on the ground of attacking the credibility of these witnesses speaking through the statements that they made.

"The Court: I don't think it would be admissible, a copy made by this man. I think it would have to be the original record.

* * *

"Mr. Rahal: Now, Your Honor, he is attempting to put the character of these defendants in issue.

"The Court: Well, it would not be putting their character in issue under our rules if they had committed one of the infamous offenses and if he did have the original record, that is the Clerk of the Court, or the custodian of that record, it would not be putting their character in issue at all, under our rules, but it would go to their credibility because at one time in this State a man who had been convicted of larceny or murder or burglary, could not even testify except in his own behalf. Then we passed a statute providing that he might testify but that the question of the weight to be given to it by the jury was solely for the jury. But I don't think it is admissible. You are not the custodian of those original records, are you? A. No, sir.

"The Court: He says he is not the custodian of those records. He could not testify as to them."

After some further testimony about another matter was given the Court ruled and charged the jury as follows:

"The Court: By the way, in regard to testimony you wanted to adduce and Mr. Rahal objected to, I actually sustained his objection on a different ground from that on which he made his objection. I sustained it on the ground that it was hearsay. His ground was also correct. Those men had not been put on the witness stand yet, therefore, didn't have any right to even attack their credibility unless and until they took the witness stand. I want to instruct this jury, I don't think the witness ever answered any question as to what the records, if any, they had showed against these two men, but if by any chance anything did slip out,

disregard it, gentlemen, because it would not be admissible against Britt and Tilson, certainly not at this stage of the game."

The rule is well established in this State that when a defendant becomes a witness in his own behalf, he is subject to the usual liabilities, duties and limitations of ordinary witnesses, and his truth and veracity may be impeached in a proper way. *State v. Bigham,* 133 S. C. 491, 131 S. E. 603, and *State v. Chasteen,* 231 S. C. 141, 97 S. E. (2d) 517. It is also a primary principle in criminal procedure that the State cannot in any way attack the character of the defendant unless that issue is first tendered by the defendant. *State v. Bigham, supra; State v. Bolin,* 177 S. C. 57, 180 S. E. 809, and *State v. Anderson,* 181 S. C. 527, 188 S. E. 186; and we think the same rule applies to a codefendant.

It appears from what we have hereinabove quoted that counsel for the appellant Westbury asked the witness if he was familiar with the record of the appellant with respect to any convictions of armed robbery and grand larceny. This witness testified that he had a copy of the record from such police department showing "the dates and what they were charged for and what with."

The only reasonable conclusion that we can reach is that by reason of what we have hereinabove quoted the jury was apprised of the fact that the appellant Britt had a criminal record with the police department in the City of Savannah, and that he had been guilty of the crimes of armed robbery and grand larceny. The conclusion is inescapable that the character of the appellant Britt had been placed in issue. The trial Judge at first sustained the obpection to such testimony on the ground that the witness did not have the original record and a copy could not be admitted in evidence. Thereafter, he did generally sustain the objection made by appellant Britt and instructed the jury to disregard the testimony.

When Chief Strom of the South Carolina Law Enforcement Division was testifying in behalf of the State, and while under cross examination by counsel for the appellant Westbury, he was asked if his department did not have among the scientific equipment used a machine for making lie detector tests. Counsel for Britt immediately objected to any testimony with reference to a lie detector test on the ground that such would implicate the appellant Britt. During the course of the discussion of the evidence, the Court asked of the witness, "Tell us whether or not *they* were given a lie detector test, given the opportunity to take one." The witness replied "The defendant Westbury did take a lie detector test and Tilson and Britt were given the opportunity but refused." Counsel for Britt again objected because this testimony implicated Britt and Tilson. Whereupon the Court said "Wouldn't it be for the jury to say whether or not, that they were given the opportunity to do it and didn't take it, would or would not that be a circumstance to be considered?" And again the Court said "I said, if they were given the opportunity to take the test and declined the opportunity, would that not be a circumstance to be considered by the jury for whatever the jury might determine it was worth? I am asking you?" It appears from the record that the appellant Westbury was given a lie detector test at his own request, and with the approval of his attorneys. The witness testified that after Westbury had requested the lie detector test that he offered counsel for Britt and Tilson the opportunity for them to take such test, but that upon advice of counsel they had refused to take such test. The question for determination is whether or not the evidence of the refusal of the appellant Britt to take the lie detector test was admissible.

In 23 A. L. R. (2d), at page 1308, under the subject "Lie Detector Tests", it was said:

"It would appear, at least in the absence of stipulation, that the courts almost uniformly reject the results of lie detector tests when offered in evidence for the purpose of

establishing the guilt or innocence of one accused of a crime, whether the accused or the prosecution seeks its introduction. The reason most commonly assigned for the exclusion of such evidence is the contention that the lie detector has not as yet attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception."

The foregoing statement is supported by a number of cases, among them being *State v. Lowry,* 163 Kan. 622, 185 P. (2d) 147; *State v. Cole,* 354 Mo. 181, 188 S. W. (2d) 43, 189 S. W. (2d) 541; *People v. Wochnick,* 98 Cal. App. (2d) 124, 219 P. (2d) 70; and *Lee v. Commonwealth of Virginia,* 200 Va. 233, 105 S. E. (2d) 152, 154, and from the last cited case we quote the following:

"The assignment of error stressed by the accused that the court erred in failing to admit the testimony of S. H. Raines, Investigator for the Virginia State Police, is without merit. The evidence sought to be introduced through the investigator dealt with findings, favorable to the accused, derived from a voluntary test administered to Lee through the use of a device known as the Keeler Polygraph or 'lie detector'. While there are several valid reasons for the exclusion of the evidence showing the result of the test in this instance, suffice it to say that such tests generally have not as yet been proved scientifically reliable, and therefore the exclusion of the evidence was not error. *People v. Becker,* 300 Mich. 562, 2 N. W. (2d) 503, 139 A. L. R. 1171, 1174; *Orange v. Commonwealth,* 191 Va. 423, 439 (headnote 8), 61 S. E. (2d) 267, 274, (headnote 6); 20 Am. Jur., Evidence, § 762, 1958 Cum. Supp., pp. 111, 112; Annotation, 23 A. L. R. (2d) 1306."

It has been held that the admission of evidence of the defendant's refusal to submit to a lie detector test was prejudicial error. *State v. Kolander,* 236 Minn. 209, 52 N. W. (2d) 458; *United States v. Bando,* 2 Cir., 244 F. (2d) 833, *certiorari* denied, 355 U. S. 844, 78 S. Ct. 67, 2 L. Ed. (2d) 53; *Commonwealth v. Saunders,* 386 Pa. 149, 125 A. (2d) 442.

After the witness Strom had completed his testimony, the trial Judge, on his own motion, with reference to the failure of the appellant Britt and Tilson to take the lie detector test, instructed the jury as follows:

"Gentlemen, a little while ago, I permitted the last witness, I believe, on the stand, Chief Strom, to testify that on the advice of counsel, Mr. Rahal, the accused, Otis Britt and Lee von Tilson, declined to take the lie detector test. I think I was in error in permitting that testimony and I am going to instruct the stenographer to strike it out and instruct you to disregard it, because I don't know—it might not be an indirect violation of one of the Amendments, constitutional amendments. You will disregard the testimony that Tilson and Britt declined to take it. Of course, they are nothing but laymen anyway. They should have acted upon the advice of their counsel and actually it was not their decision after all. I am going to ask you to disregard that as to Britt and Tilson."

The record reveals that the witness Faulk, who qualified as an expert with reference to the lie detector machine and in giving of tests thereby, described in detail the mechanisms and operation of such machine, and over objection he was permitted to testify. "The question you asked, I believe, is how many actually refuse to take the lie detector test. Less than one per cent refuse to take the test even though they are known criminals." In our opinion, permitting the witness to so testify was very damaging and highly prejudicial to the appellant Britt.

As hereinbefore recited the trial Judge struck out the testimony which tended to attack the reputation of the appellant Britt when he had not put such in issue. He also struck out testimony with reference to the appellant Britt's refusal to take the lie detector test. In both instances the trial Judge directed the jury to disregard such testimony. We have held that where incompetent testimony is admitted there is a presumption that such is prejudicial to the defendant. *State v. Singleton,* 167 S. C. 543, 166 S. E. 725.

We have also held that any error on the part of the trial Judge in admitting incompetent testimony is cured when the testimony complained of is stricken from the record, or an objection thereto is sustained, and the jury instructed to disregard it. *State v. Green,* 121 S. C. 230, 113 S. E. 317, and *State v. Singleton, supra.* We have also held that where the objectionable nature of testimony is brought to the attention of the trial Judge and he strikes it out and instructs the jury to disregard it, this cures the error in the absence of a motion by the defendant for a mistrial. *State v. Warren,* 207 S. C. 126, 35 S. E. (2d) 38. We must determine whether we will follow these pronouncements in a case where the appellant has been sentenced to die by electrocution.

The power of the law to take the life of human beings for a violation of the law is one which should be and is exercised with extreme caution. The frailities of human nature are so manifold and manifest until the law should and does place around the defendant, whose life will be taken for a violation of the law, every safeguard to enable such defendant to secure a fair and impartial trial. This Court has taken the position that in all cases involving the life of the defendant, it is not bound down to a consideration of the exceptions raised, but if anything appears in the record which would warrant a reversal of the cause, this Court will consider that matter as if raised by the exceptions. What effect incompetent testimony may have on the minds of the jurors, even after instructions to disregard same, is impossible to say. We quote from *State v. Singleton, supra,* the following:

"From the case of *Cable Piano Co. v. Southern Railway Co.,* 94 S. C. 143, 77 S. E. 868, it would seem that the court favors the exercise of a wise discretion of the circuit judge in determining the merits of such motions in each individual case. In that case the court says that it will not do to say that in every case where incompetent testimony is received and later stricken out a new trial should be

granted. Nor will it do to say that under these conditions a new trial should never be granted. The court concludes by saying that the character of the testimony, the circumstances under which offered, the nature of the case, other testimony in the case, and perhaps other matters, should be considered." [167 S. C. 543, 166 S. E. 727.]

In the case of *State v. Bolin, supra,* it appears that the defendant never offered his reputation in issue but questions were asked which constituted an attack upon the character of the defendant. The trial Judge first ruled that the questions had not been asked concerning the defendant. However, he later sustained the objection on the ground that the testimony tended to attack the reputation of the appellant when it had not been put in issue. We quote the language from the cited case which we think is here appropriate:

"It has been well said that proof of other crimes, or asking a witness in regard to the conviction of defendant of other crimes, tends to prejudice the defendant with the jurors, to draw their minds away from the real issue, and to create the impression that the defendant is of no value to the community, is not entitled to the benefit of the rules prescribed by law, is depraved in character; but that, however full of crime his past life may have been, the defendant is entitled to be tried upon competent evidence, and only for the offense charged. * * *" [177 S. C. 57, 180 S. E. 811.]

What effect the testimony as to the reputation of the appellant Britt and of his failure to take a lie detector test had upon the jury is only known to the members thereof. We reach the conclusion that it could have affected the verdict in his case. When it is made to appear that anything has occurred which may have improperly influenced the action of the jury, the accused should be granted a new trial, although he may appear to be ever so guilty, because it may be said that his guilt has not been ascertained in the manner prescribed by law.

We are convinced that the testimony directing the attention of the jurors to the fact that the appellant Britt had been guilty of previous crimes, and the testimony of his refusal to take a lie detector test, even though this testimony was finally stricken out and the jury instructed to disregard the same, constitutes prejudicial error and entitles him to a new trial. We conclude, *in favorem vitae*, that the appellant Britt is entitled to a new trial.

The appellant Britt asserts that the trial Judge committed error in refusing to charge the law of manslaughter. We have carefully examined the testimony and it fails to suggest any theory upon which a verdict of manslaughter could rest. A new trial should not be granted for failure to charge the law of manslaughter where there is no evidence tending to reduce the crime from murder to manslaughter. *State v. Edwards,* 194 S. C. 410, 10 S. E. (2d) 587. This exception is overruled.

While R. E. Tuttle, a witness for the State, and who has hereinbefore been described as a city detective in Savannah, was under cross examination, he testified that as a result of a telephone call from Sheriff Jessen of Summerville, South Carolina, Britt and Tilson were arrested. He was then asked if in that telephone conversation the Sheriff had advised the witness that Westbury had made a statement and implicated the two men in Savannah. He testified that this was true. The Court, thereupon, struck out all of the testimony as to what Sheriff Jessen had said with reference to Westbury implicating Britt and Tilson. He also instructed the jury to disregard such testimony. Counsel for Westbury then insisted that the testimony ought to be in the record for the effect it would have on the appellant Westbury because of the antagonistic defenses of Westbury with that of Tilson and Britt. It was then that the Court said: "Well, Westbury can take the stand and testify, himself. This is hearsay." It appears from the record that Westbury did not later take the stand and testify in his own behalf. He now asserts that the statement made by the trial Judge

was prejudicial to his rights. He calls our attention to Art. I, Section 17 of the 1895 Constitution of the State, which provides: "No person * * * shall be compelled in any criminal case to be a witness against himself; * * *" and Section 26-405 of the 1952 Code of Laws, which provides: "In the trial of all criminal cases the defendant shall be allowed to testify if he desires to do so, and not otherwise, as to the facts and circumstances of the case. * * *" We should point out that the trial Judge instructed the jury that no adverse inference would be drawn against the defendants in this case by reason of their failure to testify.

It is the position of the appellant Westbury that the remark made by the trial Judge had the effect of either requiring him to testify, or upon his failure so to do, emphasized to the jury such failure.

The general rule is that remarks made by a trial Judge in the course of a trial upon the admissibility of evidence and addressed to counsel do not fall within the inhibition of the Constitution against charging the jury as to matters of fact. *State v. Deas,* 202 S. C. 9, 23 S. E. (2d) 820. We have also held that remarks made by the trial Judge in the course of a trial need not be confined in such narrow limits as to prevent him from stating his reasons for his rulings, *State v. Mishoe,* 198 S. C. 215, 17 S. E. (2d) 142; but the trial Judge should not, by his remarks in ruling upon testimony offered, indicate his opinion or express a view that might be prejudicial or detrimental to a defendant. He should have ruled upon the admissibility of the testimony without suggesting that the appellant Westbury could take the stand and testify in his own behalf. In a case of such serious nature as this, where the punishment is death by electrocution, we feel compelled to grant the appellant a new trial because of the statement made by the trial Judge. We cannot say that the statement did not have some prejudicial effect with the jury when the appellant failed to take the witness stand after the suggestion had been made by the trial Judge that he could take the stand and testify in his own behalf.

For the foregoing reasons we are of the opinion that the case should be reversed and remanded for a new trial.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.