518 S.E.2d 297

**The STATE, Respondent,**

v.

**William Joseph BEAM, Appellant.**

**No. 3006.**

Court of Appeals of South Carolina.

Heard April 13, 1999.

Decided June 1, 1999.

T. Kirk Truslow, of North Myrtle Beach, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Ralph J. Wilson, of Conway, for respondent.

HUFF, Judge:

William Joseph Beam appeals his convictions on one felony count and two misdemeanor counts of transfer of recorded sounds. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Frederick Beasley, an employee of the Motion Picture Association's film security office received a complaint that Video Review of Myrtle Beach was selling or renting pirated video

tapes. Thereafter, on September 21, 1995, Beasley rented three videos from Video Review. Trained to differentiate between legitimate and pirated videos through visual inspection of their cassettes, Beasley determined each video he rented was pirated. Beasley took the tapes to the Myrtle Beach Police Department.

On October 5, Beasley returned the three tapes to Video Review and rented three more tapes and purchased one tape. Using the same visual inspection methods, he determined each of the four tapes he obtained that day were also pirated. Beasley then took the tapes to Detective John King of the Myrtle Beach Police Department.

On October 25, Beasley accompanied police officers to Video Review as they executed a search warrant. Beasley and Ray Bowley, a contract employee of the Motion Picture Association, visually examined the tapes in the inventory and found more than two hundred counterfeit tapes. The majority of the counterfeit tapes were located in the new release section. The Horry County Grand jury indicted Beam, the owner of Video Review, with one felony count and two misdemeanor counts of transfer of recorded sounds.[1]

The judge qualified Beasley as an expert in identifying the validity of video tapes. Beasley testified that a legitimate film can be removed from its original cassette, placed in another cassette, and still be a legitimate video. This might be done if the cassette is damaged. If a cassette were changed, a visual examination of the cassette could no longer determine whether the video was legitimate. During cross-examination, Beam's counsel asked Beasley about a switch point test. Beasley stated that a switch point test could be used to determine whether the film in a cassette was legal or pirated. He stated that the test could be performed with a cross pulse monitor, but that he had no expertise with that machine.

The judge qualified Bowley as an expert in trademark, copyright, and piracy issues. During cross-examination, Beam's counsel also asked Bowley about the switch point test.

---

1. The number of items containing transferred recorded sounds that a person possesses, rents, or sells controls whether it is a misdemeanor or a felony. For audio-visual items, if more than 64 items are involved, the crime is a felony. S.C.Code Ann. § 16–11–920(A)(1) (Supp.1998).

Bowley was familiar with the test and the machine used to conduct it. He stated an experienced technician could determine absolutely whether the film was genuine or counterfeit. Beam's counsel then asked whether Bowley performed a switch point test on the tapes from Video Review. Bowley admitted not performing the test on any of the tapes. The transcript then reflects the following:

Q: Okay. Well, this jury's got a tough decision to make today. Don't you think that it would require you to do that test if that's available to shut the door on whether or not you've got a counterfeit tape or not when you've got that—

A: Would you like for me to do it now?

Q. Have you got that technology available to you?

A. That can be done.

The court: Right now?

Defense Counsel: Nothing further, your honor.

The court: It can be done right now? With the equipment that's in the courtroom?

The witness: It can be arranged to be done this afternoon.

The assistant solicitor then asked Bowley if he had the equipment to perform the test. Bowley stated that he did and would be willing to perform the test. Bowley was permitted to perform the test over defense objections. Additionally, the judge denied Beam's motion for a mistrial. Bowley tested two tapes and determined both contained counterfeit films.

The jury returned guilty verdicts on all three counts. The trial judge fined Beam $1,000 each for both of his misdemeanor convictions. For the felony conviction, the judge sentenced Beam to five years imprisonment and fined him $100,000, suspended upon service of six months and payment of a $25,000 fine. He also ordered Beam to pay $6,197.97 in restitution to the Motion Picture Association. This appeal follows.

## LAW/ANALYSIS

### I. The Indictment

Beam first argues on appeal that the indictment against him did not provide the court with subject matter

jurisdiction to convict him of the transfer of recorded sounds because the indictment did not allege Beam acted with knowledge, which is an element of the charged offenses. We disagree.

An indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon. The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet.

*Browning v. State,* 320 S.C. 366, 368, 465 S.E.2d 358, 359 (1995) (citations omitted). An indictment phrased substantially in the language of the statute which creates and defines the offense is ordinarily sufficient. *State v. Shoemaker,* 276 S.C. 86, 275 S.E.2d 878 (1981). Further, the sufficiency of an indictment "must be viewed with a practical eye; all the surrounding circumstances must be weighed before an accurate determination of whether a defendant was or was not prejudiced can be reached." *State v. Adams,* 277 S.C. 115, 125, 283 S.E.2d 582, 588 (1981), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

In this case, the indictment names the offense charged, lists the code sections Beam allegedly violated, alleges that he rented, sold or caused to be rented or sold, seven counterfeit video tapes, three on September 21, 1995, and four on October 5, 1995. This portion of the indictment, which consists of the first and second counts, lists the movies allegedly rented or sold. The third count of the indictment alleges Beam possessed for the purpose of selling, renting, or causing to be sold or rented, more than one hundred counterfeit video tapes. We believe the indictment stated the offenses with sufficient certainty and particularity to allow both the judge and Beam to know what offenses were alleged. The indictment was sufficient to enable the court to know what judgment could be pronounced and to put Beam on notice of what he was being called to answer. Despite Beam's claim that the *mens rea* element was omitted from the indictment, we find the indict-

ment was sufficient, particularly in light of the fact the statutory citations were included, thereby incorporating the knowledge element. In weighing the surrounding circumstances with a "practical eye," we find Beam had the requisite notice for which indictments are intended, and he suffered no prejudice. However, we caution it is indeed the better drafting practice to specifically allege each element of the offense and include statutory or common law citations. Under the facts of this case we decline to hold the circuit court lacked subject matter jurisdiction.

## II. The Switch Point Test

Beam also argues several exceptions claiming the trial judge abused his discretion in allowing Bowley to perform the switch point test. Specifically he complains the trial judge improperly questioned Bowley, that allowing Bowley to perform the test was error, and that Beam was denied both the opportunity to effectively cross-examine Bowley and to present an expert witness on the switch point test. We find no error.

### A. Denial of Effective Cross–Examination

Beam first contends that, by allowing the test to be conducted, the trial judge denied him the opportunity to effectively cross-examine Bowley. He asserts that the only way he could have avoided the test being conducted would have been to avoid questioning Bowley regarding his failure to use the test, thus depriving him of meaningful cross-examination of the witness. We find absolutely no merit to this argument. Counsel clearly made a tactical decision to question the State's expert regarding the available technology. Counsel simply asked that proverbial "one question too many" and is dissatisfied with the result from taking that risk.

### B. Beam's Opportunity to Present an Expert Witness

Beam also complains he was denied the opportunity to present his own expert witness. He notes he learned of the switch point test the morning of the commencement of the trial and, had he been aware of the test before trial, he would have obtained his own expert witness on the test.

Beam never asked for a continuance or requested he be given the opportunity to present his own expert witness. This

issue is therefore not preserved for appellate review. *See State v. Mitchell,* 330 S.C. 189, 498 S.E.2d 642 (1998) (issue of whether trial judge committed error in not allowing recess procedurally barred where counsel never actually requested recess).

## C. Judge's Questions to Bowley

■ Beam next complains the trial judge improperly questioned Bowley, interfering with his right to meaningfully cross-examine the witness. We disagree.

Generally, the conduct of a criminal trial is left largely to the sound discretion of the presiding judge and the appellate court will not interfere unless it clearly appears that the rights of the complaining party were abused or prejudiced in some way. *State v. Bridges,* 278 S.C. 447, 298 S.E.2d 212 (1982).

We find no abuse of discretion in the judge's questions to Bowley. When Bowley indicated he could perform the switch point test, the judge asked, "Right now? . . . It can be done right now? With the equipment that's in the courtroom?" The judge simply wanted to clarify Bowley's answer. There is no indication these questions in any way deprived Beam of meaningful cross-examination.

## D. Unfair Surprise

■ Finally, Beam complains by allowing Bowley to perform the test, Beam was unfairly surprised and denied the opportunity to adequately prepare for and conduct cross-examination. We disagree.

■ Beam cannot complain about the admission of evidence where he opened the door to the evidence. *See State v. Robinson,* 305 S.C. 469, 409 S.E.2d 404 (1991) (where appellant opened door to evidence, he cannot complain of prejudice from its admission); *State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838 (1981) (appellant cannot complain of prejudice from admission of evidence if he opened the door to its admission). Further, when a party introduces evidence about a particular matter, the other party is entitled to explain it or rebut it, even if the latter evidence would have been incompetent or irrelevant had it been offered initially. *State v. Stroman,* 281

S.C. 508, 316 S.E.2d 395 (1984). A party may not complain of error caused by his own conduct. *Id.*

Once Beam's counsel questioned Bowley about the existence of the switch point test, its superiority over visual inspection in the detection of counterfeit videos, and whether the State should have been required to perform the test on the seized videotapes, the State was free on redirect to ask whether the test could be performed. Beam's counsel's questions directly attacked the expert's testimony that the seized videos were counterfeit. The State asked Bowley to perform the test, in part, to rehabilitate him. The scope of redirect is a matter of the trial court's discretion. *Stroman,* 281 S.C. at 513, 316 S.E.2d at 399. Because Beam opened the door to this evidence, the trial judge did not abuse his discretion in allowing Bowley to perform the test.

For the foregoing reasons, Beam's convictions for the transfer of recorded sounds are

**AFFIRMED.**

HEARN and STILWELL, JJ., concur.