**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sandro JIMENEZ, Defendant–
Appellant.**

**No. 99–10133.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 2000

Filed June 14, 2000

John C. Lambrose, Assistant Federal Public Defender, Las Vegas, Nevada, for the defendant-appellant.

Robert A. Bork, Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

Before: VAN GRAAFEILAND,[1] ALARCON, and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

Defendant Sandro Jimenez was charged with possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). At trial, he testified that he neither owned nor possessed the firearm in question. The government sought to impeach Jimenez with his prior convictions for assault with a deadly weapon and burglary. Recognizing the possible prejudice of such impeachment, the district court attempted to "sanitize" the assault prior by directing the prosecution to refer to it only as a "felony involving a firearm." Instead of mitigating the prejudice, this ruling inadvertently exacerbated it by gratuitously informing the jury that the "deadly weapon" involved in the defendant's prior conviction was, indeed, a firearm. Since the main issue in the present case was whether or not the defendant possessed a firearm, the district court's ruling was reversible error.

## I. Facts

In the early morning hours of November 21, 1997, Las Vegas Metropolitan Police Officer David Smith was dispatched to an apartment complex in response to a report of a burglary alarm. Upon arriving at the complex, Officer Smith observed two men, Alberto Solis and Defendant Sandro Jimenez, walking near the apartment where Smith believed the burglary alarm had originated. Smith asked the two men to stop and talk to him; Solis complied, but Jimenez continued on, and walked behind a parked pickup truck.

It is at this point that two very different versions of the facts emerge. The jury's verdict would hinge on which version it believed, and therefore, on the credibility of the witnesses. Officer Smith testified for the government that when Jimenez walked behind the truck, Jimenez's arms "from probably the elbow, maybe lower down" were obscured from Smith's view.

1. The Honorable Ellsworth A. Van Graafeiland, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

While Jimenez's hands were concealed behind the truck, Smith heard "a loud metallic sound hit the ground" which Smith believed was the sound of a gun being dropped on the asphalt parking surface. Smith drew his weapon and ordered Jimenez and Solis to raise their hands. Smith then ordered Jimenez out from behind the truck, and had Jimenez and Solis lay prone on the ground. Officer Smith then called for backup.

When Smith's backup arrived, the officers took Jimenez and Solis into custody. Officer Smith then walked behind the pickup truck to where Jimenez had been standing, and discovered a black semiautomatic handgun. The handgun was never checked for fingerprints.

After Jimenez was taken into custody, Officer Warren Gray read him his *Miranda* rights. Officer Gray testified at trial that after he read Jimenez his rights, Jimenez admitted that the gun belonged to him, and that he had thrown it under the truck because he had become scared when he saw Officer Smith.

The defense witnesses testified quite differently. First, Solis testified that after he and Jimenez were taken into custody, both of them had *denied* that the gun belonged to them. Solis also testified that he had not seen Jimenez with a gun that night, that Jimenez never told him he had a gun, and that he had not seen Jimenez drop a gun that night.

Defendant Jimenez testified in his own behalf that when Officer Smith first called out to him as he and Solis were walking in the apartment complex, Jimenez had not realized that Smith was a police officer, so he had continued walking toward the pickup truck. Jimenez testified that he eventually realized Smith was a police officer when Smith asked him to stop again. At this point, Jimenez testified:

> Well, [Officer Smith] asked for me to stop again. When I reached behind the white truck my foot hit something or kicked something which made a metallic sound and he asked me to raise my hands and for Alberto Solis to raise his

hands and step out where he could see us.

Jimenez also denied ever telling Officer Gray that the gun belonged to him.

Anticipating that Jimenez might choose to testify, the government sought leave of the court to impeach him with his prior felony convictions for burglary and assault with a deadly weapon. Although the parties previously had entered into a stipulation that Jimenez was a felon, satisfying that element of the felon in possession of a firearm statute, the government wanted to introduce the specific convictions by name in order to impeach Jimenez's testimony under Federal Rule of Evidence 609(a)(1). The issue was whether the probative value of the impeachment outweighed the danger of unfair prejudice. The district judge agreed to allow the government to introduce Jimenez's prior felonies, but ordered that the assault with a deadly weapon conviction be referred to as a "felony involving a firearm." Although the district judge obviously was attempting to minimize any prejudice to the defendant, he made no specific reference to the five factor inquiry set forth in *United States v. Cook*, 608 F.2d 1175, 1185 n. 8 (9th Cir.1979) (en banc). The first two questions the government asked Jimenez on cross-examination were whether he had been convicted of the two felonies, including the "felony involving a firearm." The district judge gave a limiting instruction to the jury that they were to consider Jimenez's previous felony convictions only as they might bear on his believability as a witness, and the government did not mention the convictions again.

## II. Analysis

### A. Rule 609(a)(1)

 Jimenez contends that the district court erred by failing to make an adequate record of the factors that contributed to the court's decision to admit evidence under Rule 609(a)(1), and by incorrectly weighing the probative value of the evidence against its prejudicial effect. The

district court's evidentiary rulings under Rule 609(a) are reviewed for an abuse of discretion. *See United States v. Alexander,* 48 F.3d 1477, 1488 (9th Cir.1995); *United States v. Browne,* 829 F.2d 760, 762 (9th Cir.1987).

■ When impeaching the testimony of a criminal defendant, Rule 609(a)(1) provides in pertinent part, "evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." This court has outlined five factors that should guide the district court's decision whether to admit evidence under Rule 609(a)(1):

1. the impeachment value of the prior crime
2. the point in time of the conviction and the witness' subsequent history
3. the similarity between the past crime and the charged crime
4. the importance of the defendant's testimony
5. the centrality of the credibility issue

*See United States v. Cook,* 608 F.2d 1175, 1185 n. 8 (9th Cir.1979) (en banc); *see also United States v. Wallace,* 848 F.2d 1464, 1473 n. 12 (9th Cir.1988). Although the trial judge is not required to state his or her analysis of each of the five factors with special precision, "the record should reveal, at a minimum, that the trial judge 'was aware of the requirements of Rule 609(a)(1).'" *Wallace,* 848 F.2d at 1473

*(quoting United States v. Givens,* 767 F.2d 574, 579–80 (9th Cir.1985)).

■ The correct procedure is for a district judge to ensure that the record reflects a consideration of the five *Cook* factors, as well as a weighing of the probative value of the conviction being offered against its prejudicial effect. Likewise, as proponents of the impeachment evidence, prosecutors should be vigilant about seeing to it that the record supports the judge's ruling.

■ We have had previous occasion to consider situations in which the record on the admissibility of the prior conviction was less than optimum.[2] In this case, although the record is less than perfect, it nonetheless compels an inference that the district judge was, "at a minimum … aware of the requirements of Rule 609(a)(1)" as required by *Wallace.* This is demonstrated by the fact that the judge recognized the possible prejudicial effect of the assault with a deadly weapon conviction, and attempted, albeit unsuccessfully, to ameliorate that prejudice. The record shows that the judge recognized the centrality of the credibility issue and the defendant's testimony, but also attempted to protect Jimenez to the extent that his assault conviction would unfairly prejudice the jury. Under these particular circumstances, we believe the district judge demonstrated that he was, "at a minimum … aware of the requirements of Rule 609(a)(1)."[3]

---

**2.** *See U.S. v. Wallace,* 848 F.2d 1464 (9th Cir.1988) (judge abused his discretion when he only expressly considered two of the five factors, and as to one of the factors he did discuss, the judge incorrectly believed that the similarity of the prior conviction and the present charge weighed in favor of, rather than against, admissibility); *U.S. v. Givens,* 767 F.2d 574 (9th Cir.1985) (judge did not abuse discretion when he stated that he had considered the five *Cook* factors without discussing them with particularity and weighed the prejudice of allowing evidence of the prior conviction against the importance of the credibility of the defendant's testimony); *United States v. Hendershot,* 614 F.2d 648 (9th Cir.

1980) (abuse of discretion when judge heard arguments from both parties, including an incorrect interpretation of Rule 609(a)(1) and simply ruled the prior conviction admissible without indicating what standard it employed).

**3.** The record is less clear that the district judge applied the *Cook* factors to the burglary prior, the use of which was allowed with barely a mention by the court or counsel. On the other hand, both priors were considered by the district judge at the same time. In any case, we need not belabor this point because we are reversing on other grounds.

The real problem in this case is that in the district judge's well-meaning attempt to mitigate the prejudice to the defendant, he inadvertently made it worse. The district judge took Jimenez's assault with a deadly weapon conviction and ordered it referred to as a "felony involving a *firearm*"—this in a trial where the only issue in dispute was whether the defendant had, in fact, possessed a firearm. By altering the nature of Jimenez's previous assault conviction to include the reference to the firearm, the judge increased, rather than decreased, the risk that the jury would "draw a conclusion that is impermissible in law: because he did it before he must have done it again." *Bagley,* 772 F.2d at 488. The limiting instruction the judge later offered could not fully eliminate this danger.

**B. Harmless Error**

An error in admitting a prior conviction may be considered harmless if the government can show that it is more likely than not that there is "a 'fair assurance' that the error did not substantially sway the verdict." *United States v. Alviso,* 152 F.3d 1195, 1199 (9th Cir.1998). The government can provide no such "fair assurance" in this case. The central issue in this case, whether Jimenez had possessed a gun the night he was arrested, came down to a question of witness credibility. The defendant offered a not implausible explanation of how the gun came to be found near the spot in the apartment parking lot where he was standing. When presented with the two plausible but conflicting stories, the jury may well have given weight to the fact that Jimenez had been convicted of a firearm felony before, and therefore, was more likely to have had a gun when Officer Smith confronted him at the apartment complex. As such, the government cannot meet its burden of demonstrating that the error was harmless in this case.

**III. Conclusion**

The district court *should* have engaged in a more extensive Rule 609(a)(1) analysis on the record, noting and discussing the five *Cook* factors. Taken as a whole, however, the district judge's actions reveal a sufficient awareness of the requirements of Rule 609(a)(1) under *Wallace.* However, the district judge's attempt to ameliorate the prejudice of the assault with a deadly weapon conviction had the reverse effect. Because the error was not harmless, the defendant's conviction is REVERSED, and the case remanded to the district court for a new trial.