533 S.E.2d 345

**The STATE, Respondent,**

v.

**Stacy A. BRANNON, Appellant.**

**No. 3196.**

Court of Appeals of South Carolina.

Heard April 10, 2000.

Decided June 19, 2000.

274

Senior Assistant Appellate Defender Wanda H. Haile, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh and Assistant Attorney General Caroline Callison Tiffin, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for respondent.

STILWELL, Judge:

Stacy A. Brannon appeals his convictions for burglary, criminal sexual assault and possession of a weapon during a violent crime. He contends the trial court erred in denying his right to counsel, in failing to suppress the victim's identifi-

cations, in denying his motion for a continuance because his expert witness was absent and in sentencing him to consecutive life sentences. We affirm.

The victim was home with her two sleeping children when a man entered her home and raped her at knife point. As he left he took six rings valued at $50 and a piggy bank containing approximately $20 in change. On the same day, the victim was treated at the hospital and gave a written statement to law enforcement. The next day the victim identified Brannon as her assailant from a photo lineup. DNA analysis identified Brannon as the source of the semen collected from the victim during the rape kit examination.

## I.

Brannon first argues the trial court erred in denying his motion to recess for the day because his expert witness on the subject of the reliability of eyewitness identifications could not testify until the following day. We disagree.

After the State rested, Brannon requested a recess until the next day because his expert had a prior engagement and was not then available. The trial court denied Brannon's request because Brannon failed to subpoena the expert even though the court informed Brannon a day earlier that if the expert was under subpoena, the court would make certain the expert was there.

"As with requests for a trial continuance, requests for a recess during trial are within the trial judge's discretion, and will be reversed on appeal only upon a showing of an abuse of that discretion." *State v. Mitchell*, 330 S.C. 189, 192, 498 S.E.2d 642, 644 (1998); *State v. Holland*, 261 S.C. 488, 498, 201 S.E.2d 118, 123 (1973) ("[T]he granting or the refusal of an adjournment or suspension of a trial of a criminal case rests in the sound discretion of the trial court."). Defense counsel did not subpoena the witness even after the trial court assured Brannon that it would obtain the expert's presence at trial, as long as the expert was under subpoena. A party cannot complain of an error induced by the party's own conduct. *State v. Whipple*, 324 S.C. 43, 476 S.E.2d 683 (1996).

■ Furthermore, the appellant must show prejudice stemming from the trial court's denial of the motion to recess in order for the denial to be reversible error. *Mitchell,* 330 S.C. at 194, 498 S.E.2d at 644–45. Here, Brannon rejected the solicitor's offer to stipulate to the substance of the expert's proposed testimony. Nor does the record contain any other offer of proof for us to review to determine if the testimony's omission from the trial is prejudicial.

Additionally, the trial court charged the jury regarding the difficulty of eyewitness identification. The court charged that the identification of Brannon was made by a person of a different race and that it may be "more difficult to identify members of a different race than members of one's own race." Without any more information in the record, we are unable to conclude that the trial court's decision to deny Brannon's motion for a recess was prejudicial.

## II.

■ Brannon argues the court erred in failing to suppress the victim's identification because it was unreliable. We disagree.

■ "The threshold inquiry in determining the admissibility of testimony regarding a pretrial identification is whether or not the testimonial evidence is sufficiently reliable to satisfy due process safeguards against misidentification." *State v. Brown,* 333 S.C. 185, 189, 508 S.E.2d 38, 40 (Ct.App. 1998). Reliability depends upon several factors that must be considered in light of the totality of the circumstances. They are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the degree of the witness's attention to the events; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time the identification was made; and (5) the time elapsed between the crime and the identification. *Id.* (citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

Here, the victim testified in camera that the room where the assault took place was brightly lit and that it was approximately eight o'clock in the morning. She testified that she first saw her attacker in the hallway as he rushed towards her.

The victim stated the face of her attacker was about eight to ten inches away for almost the entire assault. Although the man had cut two eye holes in some pants and placed them on his head, the victim related that the pants were loose and moved around on the attacker's head so that she could see portions of his face at different times. While unable to see her attacker's entire face at any one time, the victim saw parts of his face repeatedly. The attack lasted approximately five minutes and the victim testified that she paid her attacker "great attention" throughout the assault.

In her statement to law enforcement, the victim described her attacker as a black male, approximately 5'8", weighing 135 pounds and between the ages of twenty and thirty. During the photographic lineup the next day, the victim carefully considered each photograph before ultimately selecting Brannon's photo without hesitation. The victim stated she was "very certain" of the photo identification and had no doubt that the photo chosen depicted her attacker.

■■ The admission or exclusion of testimonial evidence falls within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent abuse resulting in prejudice. *See State v. Gregory,* 198 S.C. 98, 16 S.E.2d 532 (1941). We find the trial court's in camera evaluation and subsequent admission of the victim's testimony proper.

### III.

■■ Brannon next contends the trial court denied his right to counsel of his choice. Brannon was represented by a public defender. During roll call, Brannon maintained that he hired a private attorney to represent him. After speaking to the attorney Brannon purportedly hired, the trial court stated that the attorney wanted "to convey to you and upon the record and to your lawyer that she has not been retained by you, never has been retained by you, has nothing to do with your case. Do you understand that?" Brannon then replied "[y]es, sir." Brannon did not object and only raised the issue again after sentencing, when he complained the court had forced him to use a lawyer he did not want. Brannon, therefore, failed to preserve this issue for review. *See State v. Hicks,* 330 S.C. 207, 499 S.E.2d 209 (failure to object at trial pre-

serves nothing for appeal), *cert. denied,* 525 U.S. 1022, 119 S.Ct. 552, 142 L.Ed.2d 459 (1998).

## IV.

Lastly, Brannon argues the trial court erred in refusing to vacate his consecutive life sentences without parole because they are unconstitutional. We disagree.

The trial court found that Brannon had a prior conviction for a most serious offense and sentenced him to consecutive terms of life without parole for first degree burglary and criminal sexual assault. The applicable statute provides, in relevant part: "[U]pon a conviction for a most serious offense as defined by this section, a person *must be sentenced* to a term of imprisonment for life without the possibility of parole if that person has one or more prior convictions for . . . a most serious offense. . . ." S.C.Code Ann. § 17–25–45(A)(1) (Supp. 1999) (emphasis added). Under this statutory scheme, armed robbery, burglary first, and first degree criminal sexual assault are each classified as a most serious offense. S.C.Code Ann. § 17–25–45(C)(1).

Brannon does not challenge the validity of his prior conviction and sentence for armed robbery, its classification as a most serious offense, or its use to invoke application of the enhanced punishment statute. The issue before us, therefore, is whether § 17–25–45(A)(1) is inherently unconstitutional as a per se violation of the Eighth Amendment prohibition on cruel and unusual punishment.

Under most circumstances, the severity of a sentence prescribed for a particular offense remains a matter of legislative prerogative. *See State v. Burdette,* 335 S.C. 34, 515 S.E.2d 525 (1999). Thus, a reviewing court "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes. . . ." *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). On the other hand, even when a particular sentence is authorized by statute, "it may nonetheless run afoul of the Eighth Amendment prohibition against cruel and unusual punishment." *Id.* at 290, 103 S.Ct. 3001 (emphasizing that "no penalty is per se constitutional").

Historically, the Eighth Amendment has precluded sentencing a criminal defendant to a term of imprisonment that is grossly disproportionate to the severity of the crime it purports to punish. *See id.* In *Solem,* the Supreme Court invalidated the discretionary imposition of life without parole under a state sentencing enhancement statute, where Solem's recidivist crime of uttering a no account check was predicated on seven equally non-violent, relatively minor felonies. In so doing, the Court articulated three factors a reviewing court should consider when undertaking a proportionality analysis: 1) the gravity of the offense and harshness of the penalty imposed; 2) the sentences imposed on other criminals within the same jurisdiction; and 3) the sentences imposed for committing the same crime in other jurisdictions. *Id.* at 290–92, 103 S.Ct. 3001. These considerations were cited with approval by our supreme court in *State v. Kiser,* 288 S.C. 441, 443, 343 S.E.2d 292, 293 (1986).

However, in the plurality opinion of *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a deeply divided Supreme Court revisited the issue. Although *Harmelin* questioned the continued viability of any proportionality doctrine in the Eighth Amendment context, a majority of plurality members ultimately affirmed "the narrow proportionality principle that has existed in our Eighth Amendment jurisprudence for 80 years." *Id.* at 996, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment). Nonetheless, the plurality nature of *Harmelin* left the status of Eighth Amendment proportionality review somewhat unsettled.

In discussing this uncertainty, one federal circuit has stated:

> By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guarantee against disproportional sentences. Only four justices, however, supported the continued application of all three factors [outlined] in *Solem,* and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not. Only Justice Kennedy's opinion reflects [this] view. It is to his opinion, therefore, that we turn for direction. Accordingly, we will initially

make a threshold comparison of the gravity of McGruder's offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then consider the remaining factors of the *Solem* test and compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

*McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.), *cert. denied,* 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992). At least one state court also has adopted this view. *See Puga v. State,* 916 S.W.2d 547, 549 (Tex.App.1996, no pet.) ("We agree with the Fifth Circuit that disproportionality survives after *Harmelin,* and we will review a sentence to determine whether it is grossly disproportionate to the crime."). We agree with the Fifth Circuit's interpretation of *Harmelin,* and likewise approve the concurring opinion's approach to disproportionality analysis. As a result, we first compare the gravity of the crimes covered in § 17–25–45(C)(1) with the harshness of the sentence required under § 17–25–45(A)(1) of our statutory scheme.

The statute in question provides for a mandatory sentence of life imprisonment without the possibility of parole upon a defendant's conviction for a second most serious offense. *See* S.C.Code Ann. § 17–25–45(A)(1) (Supp.1999). With two exceptions not raised here, the applicable most serious offenses specifically delineated under the statute's terms are limited to crimes of violence (including related attempts or conspiracy to commit them). *Id.* Given these limitations, the crimes encompassed in § 17–25–45(C)(1) are almost by definition more grave than the offense meriting life without parole in *Harmelin,* where the Court upheld Harmelin's conviction for first-time possession of a large quantity of cocaine. In his opinion concurring in the judgment, Justice Kennedy explained that "the Michigan Legislature could with reason conclude that the threat posed to the individual and society by possession of this large an amount of cocaine—in terms of violence, crime, and social displacement—[was] momentous enough to warrant the deterrence and retribution of a life sentence without parole." *Harmelin,* 501 U.S. at 1003, 111 S.Ct. 2680.

In our view, the severity of the crimes enumerated in § 17–25–45(C)(1) similarly brings a life sentence without possibility

of parole within the constitutional bounds of the Eighth Amendment. Because our comparative analysis of the most serious offense subsections found in § 17–25–45 does not raise an "inference of gross disproportionality," we need not review the two remaining factors outlined in *Solem*. *See Harmelin*, 501 U.S. at 1004, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in the judgment) (stating that *Solem* "did not announce a rigid three-part test" for proportionality review). Accordingly, we find the enhanced penalty scheme mandated by S.C.Code § 17–25–45(A)(1) & (C)(1) (Supp.1999) is not unconstitutional per se.

For the foregoing reasons, Brannon's convictions are

**AFFIRMED.**

HEARN, C.J., and MOREHEAD, Acting Judge, concur.