550 S.E.2d 889

The STATE, Respondent,

v.

Laterrance Ramone DUNLAP, Appellant.

No. 3365.

Court of Appeals of South Carolina.

Heard June 6, 2001.
Decided July 2, 2001.
Rehearing Denied Aug. 23, 2001.

Stephen D. Schusterman, of Rock Hill, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan and Assistant Attorney General Toyya Brawley Gray, all of Columbia; and Solicitor Thomas E. Pope, of York, for Respondent.

ANDERSON, Judge:

Laterrance Ramone Dunlap appeals his conviction for distribution of crack cocaine. Dunlap argues he was prejudiced by comments made by the Circuit Court judge who presided over qualification of the entire jury panel for the week. Dunlap additionally contends the trial judge erroneously admitted evidence of his prior convictions. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On the evening of April 2, 1999, undercover police officers observed Dunlap outside his family's home engaged in a transaction with two individuals who had stopped by to visit with him. The police detained one of the visitors and found crack cocaine. The detainee informed police that Dunlap sold him the crack cocaine. Dunlap was arrested and charged with distribution of crack cocaine. A trial was held and Dunlap was convicted of the charge. The trial court sentenced Dunlap to nineteen years in prison and ordered him to pay a $100,000 fine.

## ISSUES

I. Did the trial judge err in failing to dismiss the jury because of comments made by the Circuit Court judge who qualified the entire jury panel for the week concerning defendants and their decisions to plead or continue to trial?

II. Did the trial judge err by permitting evidence of Dunlap's prior convictions?

## LAW/ANALYSIS

### I. Prejudice Stemming from Comments
### Made by Qualifying Judge

Dunlap claims that comments made by the qualifying judge tainted the entire jury panel. He further alleges the trial judge erred in failing to dismiss the jury. We disagree.

Dunlap avers in his brief that the Circuit Court judge who qualified the entire jury panel for the week stated some defendants will enter a courtroom, take a look at "everything," including the prospective jurors, and decide "to fess up" and plead guilty. Dunlap asserts these remarks were prejudicial. He maintains:

> This comment could certainly be interpreted by potential jurors that everyone that comes to court is, in fact, guilty of the crime they are charged with. It is a well known premise that many people believe that if someone is charged with a crime and brought to trial, they must be guilty. The role of the court should be to reject this popular assumption and explain the "innocent until proven guilty" theory. In the instant case, remarks made by the ... judge [who qualified the entire jury panel for the week] only reinforced the assumption that most, if not all, Defendants are guilty.

It is important to understand the qualification procedure of the entire jury panel for the week encompasses queries in regard to the general qualification of jurors. *See* S.C.Code Ann. §§ 14–7–810 to –870 (Supp.2000). Under our statute, certain individuals are disqualified or exempted from serving as a juror in any court. In *State v. Hughey*, 339 S.C. 439, 529 S.E.2d 721 (2000), the Supreme Court explained that South Carolina recognizes a difference between *"exemptions"* and *"disqualifications"* from jury duty:

> An exemption from jury duty is not a disqualification to act as a juror, but is a personal privilege that the juror may claim or waive. 50A C.J.S. *Juries* § 304 (1955); *see also* 15A Words and Phrases *Exempt; Exemption* (1950)("A person exempted from jury services is not thereby disqualified to serve on a jury."). This Court has held an exemption from jury duty is not a disqualification. *See State v. Matthews*, 291 S.C. 339, 343, 353 S.E.2d 444, 447 (1986)("An exemption under [S.C.Code Ann. § 14–7–850] is a privilege

and not a disqualification."); *State v. Toland,* 36 S.C. 515, 521, 15 S.E. 599, 600 (1892)("exemption was a personal privilege which [jurors] might or might not claim, but it did not disqualify them as jurors.").

*Hughey,* 339 S.C. at 448–49, 529 S.E.2d at 726.

The following is a list of persons *disqualified* from jury service:

(1) Persons who do not come within at least *one* of the following categories: (a) registered voter; (b) possessor of a valid South Carolina driver's license; or (c) possessor of an identification card issued by the South Carolina Department of Public Safety. S.C.Code Ann. § 14–7–130;

(2) Persons convicted in a state or federal court of a crime punishable by imprisonment for more than one year whose civil rights have not been restored by pardon or amnesty. S.C.Code Ann. § 14–7–810(1);

(3) Persons unable to read, write, speak, or understand the English language. S.C.Code Ann. § 14–7–810(2);

(4) Persons incapable by reason of mental or physical infirmities to render efficient jury service. S.C.Code Ann. § 14–7–810(3);

(5) Persons with less than a sixth grade education or its equivalent. S.C.Code Ann. § 14–7–810(4);

(6) "No clerk or deputy clerk of the court, constable, sheriff, probate judge, county commissioner, magistrate or other county officer, or any person employed within the walls of any courthouse is eligible as a juryman in any civil or criminal case." S.C.Code Ann. § 14–7–820;

(7) "No member of the grand jury which has found an indictment may be put upon the jury for the trial thereof." S.C.Code Ann. § 14–7–830;

(8) "No person is liable to be drawn and serve as a juror in any court more often than once every three calendar years and no person shall serve as a juror more than once every calendar year, but he is not exempt from serving on a jury in any other court in consequence of his having served before a magistrate." S.C.Code Ann. § 14–7–850.

The following is a list of persons *exempted* from jury service:

(1) Persons over the age of sixty-five may be exempted from serving as jurors. S.C.Code Ann. § 14-7-840;

(2) "Any woman having a child under seven years of age of whom she has legal custody and the duty of care, who desires to be excused from jury duty, shall furnish an affidavit to the clerk of court stating that she is unable to provide adequate care for the child while performing jury duty and shall be excused from such duty." S.C.Code Ann. § 14-7-860;

(3) If a student selected for jury service during the school term requests, his service must be postponed to a date that does not conflict with the school term. If a school employee selected for jury service during the school term requests, his service must be postponed to a date that does not conflict with the school term. S.C.Code Ann. § 14-7-845.

■ Ordinarily, the qualifying judge's comments to the jury panel involve general questions to determine if any members of the panel would be statutorily disqualified, exempted, or excused from service as a juror. The trial judge, on the other hand, poses a different set of questions to the jury panel concerning qualification to sit on a specific case.

■ In the instant case, the comments by the judge qualifying the entire jury panel for the week are at issue. We find the qualifying judge's comments to the general jury panel did not prejudice Dunlap. Here, there is no contest in regard to questions posed by the trial judge concerning juror qualification for the trial jury.

■ *State v. Council,* 335 S.C. 1, 515 S.E.2d 508 (1999), provides guidance in disposing of this issue. The *Council* Court determined "[t]he ultimate consideration [of the judge concerning juror qualification] is that the juror be unbiased, impartial and able to carry out the law as explained to him." *Id.* at 10, 515 S.E.2d at 513.

In the present case, before opening arguments began, the trial judge asked the trial jury pool several questions regarding their fairness and impartiality, including the succeeding questions:

● "Is there any member of the jury panel who has any religious belief or any emotional belief that you would not

be able to carry out [the function of being a juror]? If so, please say so."

- "Is there any member of the jury panel who has formed or expressed any opinion as to the guilt or innocence of the defendant, Mr. Dunlap? If so, please stand."
- "I[s] there any member of the jury panel aware of any bias or any prejudice in connection with this case? If so, and you have an opinion, we just need to know what it is."
- "[D]oes any member of the jury panel know of any reason whatsoever why he or she cannot give the State of South Carolina or the defendant, Mr. Laterrance Ramone Dunlap, a fair and impartial trial? If so, please say so."

No jury member responded in the affirmative to the trial judge's queries. The trial judge, convinced a fair and impartial jury was empaneled, permitted the trial to begin. In this circumstance, without evidence to the contrary, we must conclude the jury members followed the trial judge's instructions to notify him of bias or prejudice any of them possessed. *See Foye v. State*, 335 S.C. 586, 590 n. 1, 518 S.E.2d 265, 267 n. 1 (1999)("A jury is presumed to [have followed the trial judge's] instructions."). The record and Dunlap's brief are devoid of any evidence refuting the trial judge's conclusions. The trial judge, therefore, did not err by failing to dismiss the jury panel as previously qualified.

Quoting *State v. Britt*, 235 S.C. 395, 425, 111 S.E.2d 669, 685 (1959), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991), Dunlap asserts he is entitled to reversal because "[w]hen it is made to appear that anything has occurred which may have improperly influenced the action of the jury, the accused should be granted a new trial, although he may appear to be ever so guilty, because it may be said that his guilt has not been ascertained in the manner prescribed by law." Dunlap incorrectly applies this proposition.

Britt was tried for murder and the State was seeking the death penalty. Before trial, the police offered Britt the opportunity to take a polygraph exam. He refused. These facts were introduced at trial via the testimony of Chief Strom of the South Carolina Law Enforcement Division (SLED). The trial judge initially permitted the admission of this testi-

mony; however, after Chief Strom completed his testimony, the trial judge changed his mind regarding the admissibility of these facts and instructed the jury to disregard what was said.

On appeal, Britt claimed the SLED Chief's testimony concerning the polygraph prejudiced him, notwithstanding the trial judge's instruction to the court reporter to strike the testimony and the judge's subsequent instruction to the jury to disregard the testimony. The Supreme Court, though recognizing errors concerning incompetent testimony may be mitigated by curative instructions, concluded typical approaches to correcting errors were not necessarily suitable in death penalty trials. The Court clarified: "The power of the law to take the life of human beings for a violation of the law is one which should be and is exercised with extreme caution. The frailties of human nature are so manifold and manifest until the law should and does place around the defendant, whose life will be taken for a violation of the law, every safeguard to enable such defendant to secure a fair and impartial trial." *Id.* at 424, 111 S.E.2d at 684.

The rule articulated in *Britt* is arguably unique to death penalty trials. The case *sub judice* is not a death penalty matter. If any error was created by the qualifying judge in her remarks, it was cured by the trial judge's subsequent polling of the jury panel before the trial began to determine if any bias or prejudice existed.

## II. Evidence of Prior Convictions

■ Before presenting a defense, Dunlap requested an *in limine* ruling as to the admissibility of his prior convictions. Dunlap complains the trial court erred in ruling that evidence of his prior convictions could be used for the purpose of impeachment. We disagree.

In 1994, Dunlap was convicted of distribution of an imitation substance. Thereafter, in 1997, Dunlap was convicted of "conspiracy of intent to distribute crack cocaine."

During opening arguments, defense counsel stated the following to the jury:

You are going to hear from a young man who has been in trouble with the law from the time he was fifteen years old.

You are going to hear from a young man who was addicted to drugs and was sent to a rehab center because he was hooked on marijuana. And you are also going to hear that he has been clean ever since.

That's what you are going to hear about. And it is very easy to say, my guy, if he was involved with drugs years ago, then he should be guilty today. Look where he was. Look now where he is. Look at all the evidence and all the witness[es]. . . .

. . . .

. . . [W]e could convict him right now because he is a young man who was hooked on crack and had a problem with it. *He never sold it, but he used it.* And now, he has got his life straight.

(Emphasis added).

At the close of the State's case, Dunlap made a motion objecting to the admissibility of his prior convictions based on the prejudicial effect they would have on the jury. The trial court found Dunlap waived his right to challenge the admission of the prior convictions by commenting on his previous behavior during opening arguments. The court further ruled the convictions were admissible under Rule 609 of the South Carolina Rules of Evidence. After the trial court ruled on the admissibility of the evidence, Dunlap took the stand and testified on direct examination as to his prior convictions.

### A. Rule 609 Analysis

 Under the South Carolina Rules of Evidence, a defendant's prior convictions may be admitted for purposes of impeachment. Rule 609(a)(1), SCRE, provides a two-part test for determining whether a defendant's prior convictions can be used by the prosecution to impeach him: (1) the prior crime must have been punishable by death or imprisonment in excess of one year; and (2) the court must determine that the probative value of admitting the evidence outweighs its prejudicial effect to the accused. The trial court must weigh the probative value of the prior convictions against their prejudicial effect to the accused and determine, in its discretion, whether to admit the evidence. *Green v. State*, 338 S.C. 428,

527 S.E.2d 98 (2000). The following factors should be considered by the trial judge when undertaking this analysis:

(1) The impeachment value of the prior crime;

(2) The point in time of the conviction and the witness' subsequent history;

(3) The similarity between the past crime and the charged crime;

(4) The importance of the defendant's testimony; and

(5) The centrality of the credibility issue.

*Id.* at 433–34, 527 S.E.2d at 101; *see also State v. Colf,* 337 S.C. 622, 525 S.E.2d 246 (2000)(setting out the above five factors).

The record demonstrates the trial judge performed the examination required by *Green v. State* and *State v. Colf:*

All right, I find that pursuant to State versus Green [sic] and Colf versus the State [sic], I have done, I am now doing the 403 analysis as required and the admissibility of evidence under 609. I considered the fi[v]e factors and I understand what the defendant will offer is that he was not on drugs at the time, that he had shed himself of that type of conduct and he was just in the wrong place at the wrong time. That makes the credibility a central issue in this case.

First of all, I find the right to challenge prejudice has been waived. And that he will, in fact, by his admission of drug use and so forth will also have waived any claim to prejudice. That's not necessary, the conviction to give rise to the prejudice, but it's the actual use of it as well.

These convictions are not so remote in time. This occurred in '99 and he has a prior record in '97 and '94. I can see there is some similarity between the past crimes and the crime charged.... But I will ... instruct the jury at the time that the testimony is being allowed solely on the issue of credibility....

I first find the waiver, that it was waived. And secondly, I find there was significant value to the testimony for impeachment purposes. Credibility is certainly a central issue in this case.

Though the trial judge arguably did not expressly address each *Colf* factor, his omissions, if any, did not constitute error.

The *Colf* factors are adopted from federal case law. *See Colf,* 337 S.C. at 627, 525 S.E.2d at 248 (citing Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 609.05[3][a] (2d ed.1999) and Stephen A. Saltzburg, *Federal Rules of Evidence Manual* 1040 (7th ed.1998)). In *United States v. Jimenez,* 214 F.3d 1095 (9th Cir.2000), the Ninth Circuit Court of Appeals held a trial judge is not required to state his analysis of each of the five factors with special precision. Yet, the Court emphasized the record should reveal, at a minimum, that the trial judge was aware of the requirements of Rule 609(a)(1). *Id.* at 1098. By the trial judge's acknowledgment of the rule while performing his analysis, it is clear the judge in the case at bar was aware of Rule 609's requirements.

The trial court noted the prior crimes were closely related in time to the current charge. The criminal activity involved in this case occurred in April of 1999 and Dunlap's prior convictions occurred in 1994 and 1997. The previous convictions occurred well within the ten year limit of Rule 609.[1]

■ The trial court found there was some similarity between the prior convictions and the current charge, but ruled the evidence was admissible on the limited, but critical, issue of Dunlap's credibility. While noting that federal courts have held convictions for the same or similar crimes are highly prejudicial and should be admitted sparingly, our Supreme Court has declined "to hold similar prior convictions inadmissible in all cases." *Green v. State,* 338 S.C. at 433, 527 S.E.2d at 101.

Dunlap argues his past conviction for distribution of an imitation substance is almost identical to the charged crime.

---

1. Rule 609(b), SCRE, provides:

 Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

This contention is meritless. Distribution of an imitation substance is a far cry from the crime with which Dunlap was charged, distribution of crack cocaine. Distribution of an imitation substance involves elements and sanctions which are significantly distinguishable from the crime of distribution of crack cocaine. *Compare* S.C.Code Ann. § 44–53–390 (Supp.2000)(distribution of imitation substance statute) *with* S.C.Code Ann. § 44–53–375(B) (Supp.2000)(distribution of crack cocaine statute). The crimes are not so similar as to render the admission of Dunlap's previous conviction prejudicial.

The trial court determined Dunlap's credibility was a central issue in the case and that the introduction of Dunlap's prior convictions was necessary for impeachment purposes. Throughout the trial, Dunlap contended he had used drugs in the past but that he had never sold drugs. In refutation of Dunlap's contention, it was necessary and proper for the State to introduce evidence of his prior convictions.

■ The admission of evidence concerning past convictions for impeachment purposes remains within the trial judge's discretion, provided the judge conducts the analysis mandated by the evidence rules and case law. *Green*, 338 S.C. at 432–34, 527 S.E.2d at 100–01. Here, the trial judge conducted the required analysis. The judge's findings were based on fact and sensible reasoning. Thus, the court's admission of Dunlap's prior convictions was not an abuse of discretion. *See State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997) (recognizing admission of evidence falls within trial court's discretion and will not be reversed on appeal absent abuse of that discretion.)

■ However, even if the trial court abused its discretion in ruling the prior convictions were admissible under Rule 609, SCRE, any error would be harmless due to comments made by Dunlap's counsel during his opening argument.

## B. Waiver/Error Preservation

■ Dunlap maintains he did not waive his right to challenge the admissibility of his prior convictions. We disagree.

Dunlap relies on *State v. Mueller,* 319 S.C. 266, 460 S.E.2d 409 (Ct.App.1995), for the proposition that he did not waive his right to challenge the admissibility of the prior convictions. Dunlap avers that, because he obtained a final ruling on the admissibility of the prior convictions, he did not lose his right to challenge the admissibility on appeal merely because the evidence was elicited during direct examination. *See id.* at 269, 460 S.E.2d at 411 (finding that "if a party has obtained a final ruling on the admissibility of impeachment evidence, that party does not lose his right to challenge on appeal the admissibility of the evidence by eliciting the evidence during direct examination."); *but see Ohler v. United States,* 529 U.S. 753, 760, 120 S.Ct. 1851, 1855, 146 L.Ed.2d 826 (2000)(holding that "a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error").

Dunlap's reliance on *Mueller* is misplaced. *Mueller* involved whether or not the issue of the admissibility of a prior conviction was preserved for appellate review when the defendant introduced the evidence on direct examination. Unlike *Mueller,* Dunlap first introduced the existence of his prior criminal convictions during opening statements before a final ruling was made regarding the admissibility of the evidence.

During opening arguments, defense counsel specifically stated Dunlap had been "in trouble with the law from the time he was fifteen years old." In addition, defense counsel discussed Dunlap's addiction to drugs. Dunlap's opening argument introduced to the jury the fact that he had prior convictions and a history of drug involvement.

"[W]hen a party introduces evidence about a particular matter, the other party is entitled to explain it or rebut it, even if the latter evidence would have been incompetent or irrelevant had it been offered initially." *State v. Beam,* 336 S.C. 45, 52, 518 S.E.2d 297, 301 (Ct.App.1999); *see also State v. Stroman,* 281 S.C. 508, 316 S.E.2d 395 (1984)(holding where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though the latter evidence would be incompetent or irrelevant had it been offered initially). A party cannot complain of prejudice from the

admission of evidence if he opened the door to its admission. *Beam*, 336 S.C. at 52, 518 S.E.2d at 301; *see also State v. Robinson*, 305 S.C. 469, 409 S.E.2d 404 (1991)(concluding where appellant opened door to evidence, he cannot later complain of prejudice from its admission).

We rule Dunlap waived his right to argue that the admission of his prior convictions for impeachment purposes would be prejudicial by informing the jury of the existence of his prior criminal record during his opening statement.

## CONCLUSION

We hold the Circuit Court judge did not err in qualifying the jury panel. In addition, the trial judge fully and completely queried the trial panel as to their qualification to serve on the jury and extensively covered any bias or prejudice. Further, we find the trial judge did not abuse his discretion in ruling Dunlap's prior convictions were admissible under Rule 609, SCRE, for impeachment purposes. Moreover, Dunlap waived his right to argue that the admission of his previous convictions for impeachment purposes would be prejudicial. Accordingly, Dunlap's conviction is

**AFFIRMED.**

HUFF, J., concurs.

SHULER, J., concurs in result only in a separate opinion.

SHULER, Judge, concurring in result only:

While I concur in the judgment of the Court, I write separately because I believe the sole reason the trial court did not abuse its discretion in admitting Dunlap's prior convictions was because he waived any right to complain when his attorney stated in opening argument that he had "never sold" crack cocaine. *See State v. Trotter*, 317 S.C. 411, 453 S.E.2d 905 (Ct.App.1995), *aff'd as modified by State v. Trotter*, 322 S.C. 537, 473 S.E.2d 452 (1996) (a trial court commits no error in allowing the State to introduce evidence where the defendant opened the door to its admission). As a defendant cannot complain of error induced by his own conduct, *see State v. Brannon*, 341 S.C. 271, 533 S.E.2d 345 (Ct.App.2000) (citing *State v. Whipple*, 324 S.C. 43, 476 S.E.2d 683 (1996)), I would

find Dunlap's decision to "open the door" precluded any showing of prejudice and affirm his conviction.

However, because I disagree with the opinion's further analysis of this issue on the merits, I am compelled to concur in result only. Dunlap's criminal history included convictions, obtained when he was a juvenile, for distributing an imitation controlled substance and conspiracy to distribute crack cocaine. Although distributing an imitation drug is a separate, distinctly punishable crime from the distribution of crack cocaine, I do not believe the resulting disparity in any way reduces the potential for prejudice. To the contrary, I would find any dissimilarity between the crimes merely renders the prior conviction less probative. *See, e.g., Green,* 338 S.C. at 434, 527 S.E.2d at 101 ("Admission of evidence of a similar offense often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him.") (quoting *United States v. Beahm,* 664 F.2d 414, 418 (4th Cir.1981)). In other words, if the prior crime is indeed a "far cry" from the crime charged herein, it becomes irrelevant and therefore inadmissible to rebut Dunlap's claim that he never sold drugs.

Moreover, I believe the apparent similarity between the prior convictions for distributing what appeared to be crack and conspiracy to distribute the actual drug, and the distribution of crack cocaine, the crime for which Dunlap stood trial, served to place the jury in a position where they could "hardly avoid drawing the inference that the past conviction suggest[ed] some probability" that Dunlap committed the later offense. *Id.* (quoting *Beahm,* 664 F.2d at 419). Our courts have recognized that the impeachment value of introducing evidence of the same or similar crimes is minimal when compared to the potential for prejudice. *See State v. Colf,* 337 S.C. 622, 628, 525 S.E.2d 246, 249 (2000) (finding the trial court "erred in treating the prior crimes as if their similarity heightened their probative value when it actually increased their prejudicial effect"); *State v. Bryant,* 307 S.C. 458, 461, 415 S.E.2d 806, 808 (1992) (noting that where the State offers prior convictions for similar crimes the "prejudice is even more egregious"); *State v. Scriven,* 339 S.C. 333, 343, 529 S.E.2d 71, 76 (Ct.App.2000) (stating that where prior crimes "are either similar or identical" to the offense with which the

defendant is charged, "the likelihood of a high degree of prejudice to the accused is inescapable").

Here, the trial court stated that although there was "some similarity" between Dunlap's earlier convictions and the crime charged, his prior record had "significant value" for impeachment purposes because "[c]redibility is certainly a central issue in this case." In my view, this was error.

Without question, Dunlap's testimony was crucial to his defense, and his credibility was therefore of paramount importance. Certainly, in instances where a prior conviction is probative of *truthfulness* it should be admitted, as such evidence bears directly on credibility. *See* Rule 609(a)(2), SCRE ("[E]vidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."); *State v. Colf*, 332 S.C. 313, 318, 504 S.E.2d 360, 362 (Ct.App.1998), *aff'd as modified by State v. Colf*, 337 S.C. 622, 525 S.E.2d 246 (2000) (stating courts have affirmed the introduction of prior convictions for "theft-related crimes," because they "were highly probative where the jury faced a choice between the State's and the defendant's opposing versions of the facts").

Contrary to the trial court, however, I read our supreme court's opinion in *Green* as indicating that, in the absence of a prior conviction for a crime of dishonesty, when a defendant's credibility is key it is the prejudice from the conviction that is heightened, not its probative value. *See Green*, 338 S.C. at 434, 527 S.E.2d at 101 (affirming finding of the PCR court that counsel was ineffective when he failed to object when the State impeached Green with two convictions for cocaine possession). Accordingly, but for Dunlap's tactical mistake in "opening the door," I would otherwise find the trial court erred in balancing the prejudicial nature of Dunlap's prior convictions with their limited probative value, as drug offenses generally are not considered probative of truthfulness. *See State v. Aleksey*, 343 S.C. 20, 538 S.E.2d 248 (2000).